### In re BARKER–CHADSEY COMPANY, Debtor.

#### Bankruptcy No. 8300036.

United States Bankruptcy Court, D. Rhode Island.

March 17, 1983.

Martin K. Donovan, Roberts, Carroll, Feldstein & Tucker, Providence, R.I., for Rocky Point Amusements, Inc.

Gerrard F. Kelley, Boston, Mass., for United States Trustee.

Frank Licht, Robert N. Huseby, Letts, Quinn & Licht, P.C., Providence, R.I., for Receiver.

Robert E. Liguori, Adler, Pollock & Sheehan, Inc., Providence, R.I., for Rhode Island Hospital Trust National Bank.

Stephen E. Shamban, Loventhal & Shamban, Braintree, Mass., for Three petitioning Creditors.

Allan M. Shine, Winograd, Shine & Zacks, P.C., Providence, R.I., for Five objecting Creditors.

Brian J. Spero, Tillinghast, Collins & Graham, Providence, R.I., for Henry Hawkins.

Richard Tallo, Johnston, R.I., for Town of Johnston.

Alexander G. Walsh, Newport, R.I., for the debtor and J.T. O'Connell, Inc. Ship's Chandlery Building.

## DECISION AND ORDER DENYING MOTION TO ABSTAIN

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

On December 1, 1982, a Justice of the Providence County Superior Court appointed Frank Licht, Esq., temporary receiver for Barker-Chadsey Company, a Rhode Island corporation, and the appointment was made permanent on January 5, 1983. Two weeks later, on January 17, 1983, three creditors of the corporation filed an involuntary Chapter 7 petition in this Court. Barker-Chadsey Company and the state court receiver for the company then filed virtually identical motions for abstention, on the ground that "the interests of creditors and the debtor would be better served" if this Court were to abstain or to dismiss the case.[1] 11 U.S.C. § 305(a)(1).[2] At the hearing on the motions to abstain on March 3, 1983, a number of creditors appeared in opposition.

Creditors opposing the motions to abstain have made numerous allegations, among them the following:

1. The debtor was petitioned into state court receivership by its controlling stockholder, J.T. O'Connell, Inc., which is also an insider-creditor in the amount of $350,000.

2. Objecting creditors have claims of at least $122,000 against the debtor.

3. All non-insider, unsecured creditors who appeared prefer to have the debtor's affairs and estate administered by the Bankruptcy Court rather than by a state court receiver.

4. Substantial assets of the debtor remain to be liquidated, including sale of real estate valued in excess of $250,000, collection of accounts receivable of $210,000, and preferences totalling $70,000.

5. Only through administration of the debtor's estate in the Bankruptcy Court can creditors with wage claims obtain the priority status available under the Bankruptcy Code.

6. Only in the Bankruptcy Court can creditors benefit from the trustee's power to avoid preferential transfers and setoffs.

7. The Bankruptcy Court is a more advantageous forum in which to contest and/or litigate insider claims (including one by the controlling stockholder for $350,000) for possible subordination and/or disallowance.

The receiver relies heavily on *In re Sun World Broadcasters, Inc.,* 5 B.R. 719, 6 B.C.D. 884 (Bkrtcy.M.D.Fla.1980), and contends that *Sun World* "is a case precisely on point with the instant situation." Memorandum in Support of Motion to Abstain at 6–7. In *Sun World,* however, the state court liquidation began four years prior to the filing of the involuntary Chapter 7 petition, and the bankruptcy judge found that the "state court liquidation was ready to be concluded when this [involuntary Chapter 7] petition intervened." 5 B.R. 719, 6 B.C.D. at 884. Furthermore, the bankruptcy judge in *Sun World* found that the main petitioning creditor's claim was "the only

---

1. Although the motions by the receiver and the debtor are both titled "Alternative Motion to Dismiss or to Abstain," the memorandum submitted by the receiver focuses on the motion to abstain. At the hearing, counsel for both the debtor and the receiver stated that they do not contest jurisdiction. Accordingly, the motions are treated solely as motions to abstain, pursuant to 11 U.S.C. § 305.

2. 11 U.S.C. § 305 provides in pertinent part:
   § 305. *Abstention.*
   (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
   (1) the interests of creditors and the debtor would be better served by such dismissal or suspension. . . .

timely filed claim not allowed in full by the state court." *Id.* 5 B.R. 719, at 886. In language quoted by the receiver in the case before this Court, the bankruptcy judge in *Sun World* concluded that "[t]here exists an element of estoppel: a disgruntled player should not be heard to complain at the end of the fourth quarter that the game would have been better played in another stadium." *Id.*

■ We do not disagree with the conclusions of *Sun World;* rather, we find the case inapposite. In the instant case there has been no prolonged delay by creditors, nor is there any attempt by creditors to use the "Bankruptcy Court . . . as a super appellate court for dissatisfied claimants in state court liquidation proceedings." *Sun World,* 5 B.R. 719, 6 B.C.D. at 886. The rights of the parties have not been adjudicated in a state court, and the receiver's assertion that the state court proceeding is "ready to be concluded," *id.* 5 B.R. 719, at 884, is hotly disputed by the objecting creditors.

The state court petition for the appointment of a receiver was filed by J.T. O'Connell, Inc., which shares common ownership with Barker-Chadsey Company. Because this is a friendly receivership, the objecting creditors contend that J.T. O'Connell's claim in the amount of approximately $350,000 should be closely scrutinized for possible subordination under applicable provisions of the Bankruptcy Code.

The receiver concedes that as much as $56,000 might be regarded as preferences under 11 U.S.C. § 547, and, if recovered, would probably be available to general creditors in a bankruptcy proceeding, but he asserts that this amount is *de minimis,* in view of the size of this case.[3] The objecting creditors do not share this view. In addition, employee wage claimants would receive up to $2000 under 11 U.S.C. § 507(a)(3)(B), but are limited to a maximum of $300 in a state court receivership (R.I.Gen.Laws § 28–14–6.1).

■ Finally, although several creditors oppose the motions for abstention, we know of no creditors, except insiders, who favor leaving these proceedings in the state court. The conclusion is inescapable that the requirements of 11 U.S.C. § 305(a)(1)—that "the interests of creditors and the debtor would be better served" by abstention— have not been met in this case. If the case is allowed to remain in the state court, the secured creditor, Rhode Island Hospital Trust National Bank, is the only creditor likely to receive any payment. Thus the general creditors' only opportunity to realize anything appears to be in the Bankruptcy Court.

The legislative history of § 305 indicates that a bankruptcy court may properly abstain or dismiss a case

> if an arrangement is being worked out by creditors and the debtor out of court, there is no prejudice to the rights of creditors in that arrangement, and an involuntary case has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 325 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 35 (1978), U.S.Code Cong. & Admin.News, pp. 5787, 6281. Here the opposition to abstention comes not as a threat from "a few recalcitrant creditors", but rather from a substantial body of arms-length creditors whose interests will clearly be better served in the Bankruptcy Court than by a state court receivership.

Accordingly, this Court declines to abstain from these proceedings. The motions to abstain are denied.

---

**3.** Based upon representations of counsel, it is unclear whether any assets would be available for distribution to creditors in the state court ·proceeding.