### In re WILLIAMSBURG SUITES, LTD., Debtor.

#### Bankruptcy No. 90–31227–S.

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

July 10, 1990.

---

David R. Ruby, McSweeney, Burtch & Crump, Richmond, Va., Joseph W. Murphy, Klineman, Rose, Wolf & Wallack, Indianapolis, Ind., for petitioning parties.

Kevin R. Huennekens, Daniel A. Gecker, Maloney, Yeatts & Barr, Richmond, Va., William R. Baldwin, III, Everette G. Allen, Jr., Hirschler, Fleischer, Weinberg, Cox & Allen, Richmond, Va., Augustus C. Epps, Jr., Christian, Barton, Brent & Chappell, Richmond, Va., for General Partners.

Robert D. Perrow, Williams, Mullen, Christian & Dobbins, Richmond, Va., for Crestar Bank, Bondholder.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY,
Bankruptcy Judge.

This matter comes before the Court upon the filing of an involuntary Chapter 11 bankruptcy petition against Williamsburg Suites limited partnership and a motion filed by one of the general partners to dismiss the involuntary bankruptcy petition pursuant to 11 U.S.C. § 305. Finding that dismissal is in the best interests of creditors and the debtor, the Court hearby dismisses the involuntary petition.

## FINDINGS OF FACT

Williamsburg Suites, Ltd. ("debtor") is a Virginia limited partnership formed for the purpose of owning and operating the Williamsburg Quality Suites Hotel located in Williamsburg, Virginia. The general partners currently consist of Alan S. Freemond ("Freemond"), George M. Hillenbrand II ("Hillenbrand"), Alexander B. McMurtrie, Jr. ("McMurtrie, Jr."), William G. McMurtrie ("McMurtrie") and Charles A. Somma, Jr. ("Somma"). The genesis of the dispute which has reached the Bankruptcy Court is a Bill of Complaint for Dissolution of Partnership and Appointment of Receiver filed in the Richmond Circuit Court by McMurtrie, Jr. In his complaint, McMurtrie, Jr. alleged that the partnership had been dissolved by acts of the general partners and also by operation of law, and prayed that the circuit court enter a decree dissolving the partnership, award damages against the managing partner Freemond, and appoint a special receiver to take charge and dispose of the partnership assets. By all accounts, the relationship between the general partners had deteriorated severely prior to the filing of the Bill of Complaint and agreement between partners became impossible.

Trial on McMurtrie, Jr.'s complaint commenced before the Honorable T.J. Markow of the Richmond Circuit Court. On April 20, 1990, Crestar Bank ("Crestar"), a creditor of the debtor secured by a note and deed of trust on the debtor's principal asset, the hotel property ("Hotel"), filed a notice of default of the debtor's obligation. Presumably, notification of default was a prerequisite to Crestar's foreclosure rights under its note and deed of trust, however the Court has no evidence before it that Crestar intends to foreclose on the Hotel. That same day, before the conclusion of the trial on McMurtrie, Jr.'s complaint, Hillenbrand, one of the general partners and a defendant in the state court dissolution action, filed the instant involuntary bankruptcy petition against the partnership, staying the circuit court proceeding as well as any other action against the partnership.

McMurtrie, Jr. immediately moved for relief from stay to permit the circuit court to conclude its proceedings and render a decision on the merits of the complaint for dissolution. This Court conducted a hearing on McMurtrie, Jr.'s motion on April 30, 1990. Finding that sufficient cause existed, the Court lifted the stay to permit the circuit court to render a decision on the merits of McMurtrie, Jr.'s complaint. However, the stay remained in effect with regard to the request for appointment of a receiver. Relieved of the imposition of the stay, the circuit court ruled that the partnership had dissolved but denied McMur-

trie, Jr.'s request for damages. According to the transcript of the circuit court's bench ruling, the court was inclined to appoint a receiver to take control and distribute the partnership assets, but that the imposition of the bankruptcy case precluded such a measure.

On June 18, 1990, this Court conducted a hearing on the involuntary petition and on a motion by Hillenbrand to appoint a trustee. Of the general partners served with the involuntary petition, McMurtrie, Jr. filed an answer contesting the petition, and Freemond filed an answer supporting Hillenbrand's position. At this hearing, Hillenbrand put on evidence that the partnership was not making regular mortgage payments to Crestar and that a significant arrearage existed which probably could not be caught up. Additionally, the debtor's obligations to several accounting and law firms employed by the debtor were past due. McMurtrie, Jr. offered evidence that the debtor's trade creditors were being paid on a regular basis, and argued that no cause existed for sustaining the involuntary petition. Another general partner, Somma, appeared and contested the petition. Freemond also appeared, and in a reversal of his former position, stated his opposition to the petition.

At the conclusion of the evidence, McMurtrie, Jr. moved in open court for the Court to dismiss the case pursuant to 11 U.S.C. § 305. The Court continued the hearing on the involuntary petition, the motion for appointment of trustee, and the motion to dismiss to July 3, 1990, to enable McMurtrie, Jr. to notice interested parties of his motion. At the July 3 hearing, McMurtrie, Jr. argued that the interests of the debtor and the creditors of the debtor would be better served by dismissal of the bankruptcy case and appointment of a receiver pursuant to the complaint pending in the state circuit court. McMurtrie, Jr., himself an attorney licensed to practice in Virginia, testified that the state law remedy of receivership would be a quicker and simpler mechanism for liquidating the partnership assets. Hillenbrand testified that it was his impression that bankruptcy would provide a more comprehensive framework within which to deal with the partnership problems. All parties concerned agreed that the discord among the partners has made the continuation of the partnership an impossibility, and that the only issue outstanding was to determine the most efficient means of winding up the partnership affairs and liquidating the partnership assets.

## CONCLUSIONS OF LAW

■ Pursuant to 11 U.S.C. § 305, the Court may dismiss a case or may suspend all proceedings in a case at any time if the interests of creditors and the debtor would be better served by such dismissal or suspension. 11 U.S.C. § 305. The decision whether to dismiss a case pursuant to § 305 lies solely within the discretion of the Bankruptcy Court. *Matter of Fitzgerald Group*, 38 B.R. 16, 17 (Bankr.S.D.N.Y. 1983). This Court determines that dismissal pursuant to § 305 is the proper remedy in this case, and accordingly does not reach the merits of Hillenbrand's involuntary petition or motion to appoint a trustee.

■ Dismissal pursuant to § 305 is appropriate even where petitioning creditors have established a case for an involuntary bankruptcy. *In re Caucus Distributers, Inc.*, 106 B.R. 890, 930 (Bankr.E.D.Va. 1989); *In re Tarletz*, 27 B.R. 787 (Bankr. Colo.1983). The Court has thoroughly examined the relevant decisional authority construing § 305, and has found the decisions to be equally split between courts applying § 305 where a non-bankruptcy proceeding would dispose of the issues, and courts which have declined to dismiss cases pursuant to § 305 in similar circumstances. Courts which have employed § 305 dismissal include: *In re Beacon Reef Limited Partnership*, 43 B.R. 644 (Bankr.S.D.Fla. 1984); *Matter of Win–Sum Sports, Inc.*, 14 B.R. 389 (Bankr.D.Conn.1981); *Fitzgerald, supra*, 38 B.R. 16; *Tarletz, supra*, 27 B.R. 787. Likewise, courts confronted with similar situations have declined to dismiss pursuant to § 305, noting that this provision of the Bankruptcy Code was intended to be an exceptional remedy. *In re RAI*

*Marketing Services, Inc.*, 20 B.R. 943 (Bankr.D.Kan.1982); *In re Ceiling Fan Distributor, Inc.*, 37 B.R. 701 (Bankr.N.D. La.1983); *In re Barker–Chadsey Co.*, 28 B.R. 308 (Bankr.D.R.I.1983); *In re Donaldson Ford, Inc.*, 19 B.R. 425 (Bankr.N.D. Ohio 1982).

*Fitzgerald* concerned a debtor which was a partnership in dissolution at the time it filed its Chapter 11 bankruptcy petition. The U.S. Trustee moved pursuant to § 305 to dismiss the case, and the court granted the motion. Important to the court's decision was the fact that the partnership was in dissolution prior to the bankruptcy filing, and the only task facing the partnership was the winding up of partnership affairs. According to the court:

> Since the debtor has dissolved under subdivision 4 of section 62 of New York Partnership Law and exists as an entity only for "winding up its affairs," the Bankruptcy Court is an inappropriate forum for the winding up of the partnership and the interests of the debtor and of the creditors would be better served if the Bankruptcy Court dismissed this case.

*Fitzgerald*, 38 B.R. at 18. Additionally, the court noted that there were marginal assets in the bankruptcy estate and that these assets would be depleted by the costs associated with bankruptcy administration. Finding that the remedies available to the debtor pursuant to New York partnership law would be adequate, the court found that the interests of the debtor and the creditors would be best served by dismissal of the case. *Id. See also Tarletz*, 27 B.R. at 794 (court dismissed case pursuant to § 305, noting that state law remedies would adequately address creditors' concerns).

■ With respect to the determination of the rights of the general partners and cred-

itors of the partnership in the instant case, the Virginia partnership laws establish a comprehensive and detailed procedure. In deciding the merits of McMurtrie, Jr.'s complaint for dissolution and appointment of a receivership, Judge Markow ruled that the debtor is in dissolution. Virginia law is quite specific as to the status of partnerships in dissolution. According to Virginia Uniform Limited Partnership Act § 50–73.51:

> Except as provided in the partnership agreement, the general partners who have not wrongfully dissolved a limited partnership or, if none, the limited partners, may wind up the limited partnership's affairs; but the circuit court as specified in § 50–73.16 upon cause shown may wind up the limited partnership's affairs upon application of any partner, his legal representative, or assignee.

Virginia Code Ann. § 50–73.51 (1987). The authority of the partners to act on behalf of a partnership in dissolution is limited to the tasks inherent in winding up the affairs of the partnership and to complete pre-dissolution transactions. Virginia Code Ann. § 50–33 (1942). Upon dissolution, the partners have a right to an accounting of their respective interests pursuant to clear and unambiguous standards. Virginia Code Ann. §§ 50–43, 50–40 (1942). If the individual partners are in dispute over their respective shares and liabilities, an action for an accounting could be brought pursuant to § 50–43 before a state court thoroughly familiar with the process of winding up partnership affairs. No corresponding bankruptcy provision is applicable in this case to deal with partnership dissolution.[1] Section 50–73.52 establishes a priority scheme for distribution of assets to creditors. Virginia Code Ann. § 50–73.52 (1985).

---

1. Hillenbrand has argued that Bankruptcy Code § 723 "Rights of a partnership trustee against general partners" should be employed in the bankruptcy case to enable a trustee to assert partnership claims against the general partners, and concludes that this is a justification for preferring the continuation of the bankruptcy case over the state law process. This argument overlooks two factors present in this case.

First, the Virginia Uniform Partnership Act provides for an accounting of the respective liabilities of partners, and suit may be filed against any partner based on a partnership obligation under Virginia law. Second, § 723 would be inapplicable in this Chapter 11 case, as § 103 provides that sections within subchapter II of Chapter 7, including § 723, are applicable only in Chapter 7 cases. 11 U.S.C. §§ 103, 723.

In his ruling, Judge Markow indicated that absent the stay of 11 U.S.C. § 362, he would appoint a receiver to liquidate the partnership assets. If the state court proceeding is allowed to continue, the winding up and liquidation of the partnership would be performed by the court-appointed receiver with the ongoing supervision of the state circuit court. Detailed procedures for appointment and administration of a receivership are set forth in the Virginia Code. Virginia Code Ann. §§ 8.01–582 to 8.01–589.

It is highly unlikely that the winding up of the partnership would proceed more smoothly in bankruptcy than it would following the state law procedures. Indeed, the bankruptcy process can often be cumbersome. With respect to the sale of assets out of the ordinary course of business in a bankruptcy case, a bankruptcy trustee or debtor-in-possession must clear several hurdles. First, a complaint to sell the property free and clear of liens would have to be initiated pursuant to Bankruptcy Rules 6004, 9014, 7004 et al. Second, the sale would necessarily be noticed to general creditors pursuant to Bankruptcy Rule 2002, which provides for a 20–day period within which all general creditors would be able to object. Based on prior sales conducted in cases before this Court, it is difficult to envision such a sale in this case concluding with any celerity, particularly in light of the fact that the general partners continue to disagree on all issues. Even with the appointment of a trustee this discord is not likely to abate.

Furthermore, bankruptcy cases, especially Chapter 11 cases, are expensive. The trustee or debtor-in-possession in this case will be required to file schedules of assets and liabilities and monthly financial reports. Creditors must be noticed of a multitude of actions taken by the debtor, including the use, sale, or lease of property outside the ordinary course of business. These requirements pertain equally to Chapter 7 and Chapter 11 cases. Moreover, the Chapter 11 process for obtaining confirmation of a plan is long and involved, as the debtor must obtain judicial approval of a disclosure statement and creditor approval of a plan of liquidation. This process usually requires the services of numerous professionals, including appraisers, counsel for the debtor, a trustee, counsel for the trustee and counsel for a creditors' committee, all of which would be paid as administrative expenses of the bankruptcy estate. 11 U.S.C. § 503(b).

Given the fact that the partnership is in dissolution and that there exists a comprehensive state law mechanism for deciding the significant issues facing the partnership, the Court concludes that the debtor and creditors of the debtor would be better served by the dismissal of this case pursuant to § 305 of the Bankruptcy Code. Essentially, the proceedings before the Court amount to a disagreement among the general partners relating to management and operation of a single asset partnership which is in dissolution. The interests of the debtor would best be served by permitting the state court to establish the respective interests and liabilities of the partners in accordance with Virginia partnership law. The interests of the debtor's creditors would be best served by an expeditious and inexpensive sale of the Hotel. The Court's experience with such sales in bankruptcy leads to the conclusion that a bankruptcy sale in this case would be more time-consuming and costly than a sale pursuant to state law procedures. Creditors will be better served by a sale accomplished quickly, during the debtor's prime operating season, and less expensively pursuant to a state law receivership.

Accordingly, the Court dismisses the case pursuant to § 305.

An appropriate Order will issue.