In re MACKE INTERNATIONAL TRADE, INC., Debtor.

Lawrence I. Wechsler, Appellant/Cross–Appellee,

v.

Macke International Trade, Inc., Appellee/Cross–Appellant.

BAP Nos. CC–05–1437–PaMaB, CC–05–1441–PaMaB.

Bankruptcy No. SV 05–14258–GM.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Feb. 22, 2007.

Filed June 8, 2007.

Alex Zarcone, Oliva & Associates, San Diego, CA, for Lawrence I. Wechsler.

Mark R. Campbell, Mark Campbell Law, Anaheim, CA, for Macke International Trade, Inc.

Before: PAPPAS, MARLAR [1] and BRANDT, Bankruptcy Judges.

[1]. The Honorable James M. Marlar, United States Bankruptcy Judge for the District of Arizona, sitting by designation.

## OPINION

PAPPAS, Bankruptcy Judge.

### INTRODUCTION

Venturing into an area of unsettled law, we hold that a bankruptcy court may, under appropriate circumstances, order a petitioning creditor to pay an alleged debtor's attorney's fees and costs when, upon finding that the interests of creditors and debtor would be better served, it dismisses an involuntary petition pursuant to § 305(a).[2] We reject the petitioning creditor's appeal of such an award and also conclude that the bankruptcy court did not err in denying the creditor's request to offset the award against amounts due to the creditor under a judgment against the alleged debtor.

Finally, in connection with the debtor's cross-appeal, we also affirm the bankruptcy court's decision finding that the involuntary petition was not filed in bad faith, reducing the amount allowed for attorney's fees and costs by approximately one-half, and rejecting the debtor's request for punitive damages pursuant to § 303(i)(2).

### FACTS

#### A. The Patent Litigation

Macke International Trade, Inc., a/k/a Malibu Pacific Investors, Inc., f/d/b/a Petcrew ("Macke" or "alleged debtor"), a corporation, manufactured and sold pet products.

In 1999, Lawrence Wechsler ("Wechsler"), a patent attorney and business competitor in the pet product industry, sued Macke in federal court, alleging that Macke had infringed his patent in connection with Macke's sale of certain "Handi–Drink" products. After protracted litigation, in February of 2005, Wechsler recovered a judgment against Macke and its owner, Anthony O'Rourke ("O'Rourke"), for approximately $650,000. Macke and O'Rourke, represented by the same counsel, appealed the judgment, and that appeal and a cross-appeal are pending in the U.S. Court of Appeals for the Federal Circuit.

During its six years of litigation with Wechsler, Macke incurred over $900,000 in attorney's fees, which it was unable to pay.[3] Macke operated at a loss and had debts of over $1.5 million. Its three largest creditors were two of its former litigation attorneys and Wechsler. O'Rourke decided to wind up Macke's operations and assign its remaining assets for the benefit of its creditors. On January 13, 2005, Macke executed a General Assignment Agreement in favor of Equitable Transitions, Inc. ("Assignee").

Assignee liquidated Macke's hard assets in a sale consummated on June 17, 2005. It yielded only $10,500 in proceeds. Wechsler, although notified of the assignment process, did not file a claim to participate in any distributions by Assignee.

Meanwhile, in the Federal Circuit appeal, Wechsler threatened to move to disqualify Macke's and O'Rourke's counsel. Wechsler asserted that Assignee was the real party in interest, and that any continued dual representation was an unwaivable conflict of interest. Macke's counsel capitu-

---

**2.** Unless otherwise indicated, all Code, chapter, section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated prior to the effective date (October 17, 2005) of the Bankruptcy Abuse Prevention

and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23 (2005).

**3.** Indeed, the evidence indicated that about 95 percent of Macke's revenue had come from sales of the Handi–Drink products.

lated by preparing to withdraw. Macke and O'Rourke retained substitute appellate counsel, O'Rourke purchased Assignee's interest in the appeal, and the appeal proceeded.

### B. The Involuntary Bankruptcy Case and the Bankruptcy Court's Decision.

On June 21, 2005, Wechsler filed an involuntary chapter 11 petition against Macke in bankruptcy court.

Macke responded with both an answer and a motion to dismiss the involuntary petition. The substantive grounds for dismissal were stated in the alternative. Primarily, Macke alleged, pursuant to § 303(i), that Wechsler was guilty of bad faith in filing the petition, and contended that he was attempting to gain a litigation advantage over Macke in the pending appeal by increasing O'Rourke's litigation costs in bankruptcy court. Macke also alleged that Wechsler had failed properly to investigate the administration of Macke's assets by Assignee before filing the involuntary petition, either by contacting Assignee or by conducting a debtor's examination.

Alternatively, Macke asked the bankruptcy court to dismiss the case under § 305(a) because dismissal would better serve the interests of the creditors and Macke. Macke maintained that all its assets had been liquidated in the wind-up of its business, that there was nothing to reorganize, and that little purpose could be served through a chapter 11 case.

Macke further sought reimbursement of its attorney's fees and costs from Wechsler under § 303(i) or, alternatively, under the court's inherent authority. In addition, Macke sought sanctions against Wechsler's counsel for allegedly violating Rule 9011.

Wechsler responded to Macke's motion in written declarations. He alleged that he filed the involuntary petition in order to reach O'Rourke's income through a potential reconfiguration of Macke's business operations. He asserted that Macke's products were still being advertised for sale worldwide, that O'Rourke had attended a trade show in March of 2005, and that Macke/O'Rourke maintained websites on the internet for Petcrew and Handi–Drink. He disputed any lack of investigation on his part, and maintained that O'Rourke had been evasive in response to Wechsler's demands for information. Furthermore, Wechsler maintained that he had requested a list of Macke's creditors from Assignee in March of 2005, but Assignee had refused to comply.

Macke replied, denying that the company was a viable business and asserting that the product advertising referenced by Wechsler was designed merely to maintain the status quo pending the sale of Macke's assets. O'Rourke maintained in a declaration that his presence at the trade show was to help him in securing a consulting position with the buyer of Macke's assets.

The bankruptcy court allowed both sides to file supplemental briefs and declarations on the issues. Counsel for Macke, Mark Campbell ("Campbell"), filed a fee application for services rendered between July 6, 2005, and September 14, 2005, totaling $31,028.01 for approximately 102 hours of services. To this figure, Campbell added another 18 hours for his anticipated work on the supplemental brief and oral argument for the hearings. Therefore, although not substantiated by an updated fee statement that is part of the record on appeal, Campbell asked for an award reflecting 120 hours of services at $325/hour for total fees and costs in the amount of $39,678.

The bankruptcy court heard argument

on all issues over two days.[4] It announced its decision at the conclusion of the hearing wherein, for the most part, it adopted its findings, analysis, and conclusions expressed in a tentative ruling it had issued prior to the hearing (hereafter "Tentative Ruling").

The bankruptcy court determined that it would dismiss the bankruptcy case under § 305(a) because it found to do so would be in the best interests of the debtor and creditors. In particular, the bankruptcy court reasoned that:

> The court appears to have jurisdiction ... but simply believes it is in the best interest of all parties not to exercise it. Although an assignment [of all of Macke's assets] is pending in state court, Wechsler decided not to participate in the assignment and is the only creditor who filed this petition. This is a two-party dispute between [Macke] and a single creditor with a long history of litigation. [Macke] has made allegations that this petition was filed by Wechsler in order to gain an advantage in the pending appeal. Finally, this filing appears to lack a bankruptcy purpose: [Macke] was not in need of debt adjustment, does not need a breathing spell from creditors, and does not need a discharge and a fresh start.... There appears to be nothing to reorganize or even liquidate. If there is, the Assignee had notice of the allegations made by Wechsler regarding additional assets and can pursue those in state court, if necessary. However, the continuation of this case would only lead to administrative expenses, and would be a waste of judicial resources.

Tentative Ruling at 10 (Oct. 25, 2005).

Having decided to dismiss the involuntary petition under § 305(a), the bankrupt-cy court next analyzed Macke's request for an award of attorney's fees and costs. It interpreted § 303(i)(1) to allow, subject to the court's discretion, an alleged debtor to recover fees and costs if an involuntary petition is dismissed for any reason other than with the consent of all the parties, or where the putative debtor has waived its right to recovery. The bankruptcy court noted the lack of a definitive decision from the Ninth Circuit concerning whether a fee award under § 303(i) could be made when a case was dismissed under § 305(a). It concluded that, although damages were not awardable, attorney's fees and costs were. It then determined that such an award was appropriate in this case based on the totality of the circumstances, which the court described as follows:

> In this case, the involuntary petition meets the requirements of § 303(h): there is no argument that [Macke] is and was insolvent at the time of filing and there is no bona fide dispute. However, all of [Macke]'s assets have been sold as part of the assignment for the benefit of creditors and there is nothing to liquidate or reorganize under chapter 11 or any other chapter.... As to the evidence presented by Wechsler that [Macke] may be doing business abroad and conducting business through other websites, ... [these allegations can] be addressed in another forum.... Wechsler is the only creditor who decided not to participate in the assignment and instead filed the petition, more than six months after the assignment was made. And although Wechsler was a direct competitor of [Macke], he maintains that he wants [Macke] to be reorganized under the auspices of a chapter 11 trustee. This does not make sense. *On the whole,*

---

4. The record reflects that the parties attempted to settle the payment of Macke's attorney's fees prior to the hearing, but could not reach an agreement.

*it appears to this Court that Wechsler is looking for another forum to pursue his claims against [Macke] and for another fiduciary. This is forum shopping and will not be allowed. Therefore, the totality of the circumstances points to the fact that this filing was unnecessary.*

Tentative Ruling at 11–12 (emphasis added).

Next, after citing the objective test for bad faith set forth in *Jaffe v. Wavelength, Inc. (In re Wavelength, Inc.)*, 61 B.R. 614, 620 (9th Cir. BAP 1986), the bankruptcy court declined to award compensatory or punitive damages under either § 105(a) or § 303(i)(2). *See* Tentative Ruling at 9. Although the court's tentative decision did not make an express finding as to "bad faith," it did state that punitive damages were unwarranted because Wechsler's behavior did not rise "to the level which could be considered malicious or vengeful...." Tentative Ruling at 11. Furthermore, at the October 25th hearing, the bankruptcy court stated several times that it had found neither "bad faith" nor "grounds for punitive damages." Hrg. Tr. 20:16–18; 23:12–13 and 22–24 (Oct. 25, 2005). Moreover, the bankruptcy court determined that Rule 9011 sanctions were not warranted against Wechsler's attorney.[5]

In calculating the amount of fees to be awarded to Macke, the bankruptcy court found that this was "a ridiculously overworked case on both sides," and reduced the requested fees by approximately one half, ordering Wechsler to pay $20,000 for Macke's attorney's fees.

Finally, for public policy reasons, the bankruptcy court disallowed Wechsler's request to offset the $20,000 fee award against the judgment debt owed to Wechsler by Macke and O'Rourke.

The bankruptcy court entered an Order on October 25, 2005, which, "for reasons stated on the record and in the Court's written tentative ruling," granted Macke's motion for dismissal of the involuntary petition pursuant to § 305(a), awarded Macke $20,000 as attorney's fees and costs pursuant to § 303(i)(1), to be paid in full within 30 days of entry of the order, and denied Macke's request for punitive damages.

Wechsler filed a timely appeal and Macke timely cross-appealed. The appeals were consolidated for oral argument.

### ISSUES

1. Whether the bankruptcy court erred in awarding attorney's fees and costs to Macke pursuant to § 303(i)(1) when the involuntary petition was dismissed pursuant to § 305(a).

2. Whether the bankruptcy court abused its discretion in reducing Macke's requested fee award.

3. Whether the bankruptcy court erred when it denied Wechsler's request to offset the fee award against the Macke judgment debt.

4. Whether the bankruptcy court erred in refusing to award punitive damages to Macke for a bad faith filing pursuant to § 303(i)(2).[6]

---

**5.** Macke has not challenged the bankruptcy court's ruling on the Rule 9011 sanctions in its cross-appeal, nor has it named Wechsler's attorney, who also signed the petition, as a cross-appellant. Therefore, any appeal of the Rule 9011 sanction issue has been waived. *See Doty v. County of Lassen*, 37 F.3d 540, 548 (9th Cir.1994) (by failing to brief an issue on appeal, the appellant waives his right to raise that issue).

**6.** Because we affirm the award of attorney's fees and costs under § 303(i)(1), we need not address whether the bankruptcy court should

## STANDARDS OF REVIEW

 The bankruptcy court's findings of fact are reviewed for clear error, and conclusions of law are reviewed *de novo. Padilla v. U.S. Trustee (In re Padilla),* 214 B.R. 496, 498 (9th Cir. BAP 1997), *aff'd,* 222 F.3d 1184 (9th Cir.2000). We review mixed questions of law and fact *de novo. Eastman v. Eastman (In re Eastman),* 188 B.R. 621, 624 (9th Cir. BAP 1995). A mixed question exists when the facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the legal rule. *Id.*

 We review the bankruptcy court's interpretation of the Bankruptcy Code regarding attorney's fees *de novo. Law Offices of David A. Boone v. Derham–Burk (In re Eliapo),* 468 F.3d 592, 596 (9th Cir.2006). The amount of an award of attorney's fees is reviewed for an abuse of discretion, and will not be disturbed on appeal unless the court abused its discretion or erroneously applied the law. *Higgins v. Vortex Fishing Sys., Inc.,* 379 F.3d 701, 705 (9th Cir.2004).

 The bankruptcy court's decision as to whether to allow setoff pursuant to § 553(a) is reviewed for an abuse of discretion. *HAL, Inc. v. United States (In re HAL, Inc.),* 196 B.R. 159, 161 (9th Cir. BAP 1996), *aff'd,* 122 F.3d 851 (9th Cir.

1997); *United States v. Arkison (In re Cascade Roads, Inc.),* 34 F.3d 756, 763 (9th Cir.1994).

 Whether the bankruptcy court applied the correct legal standard in analyzing bad faith is a mixed question of law and fact that we review *de novo. Eastman,* 188 B.R. at 624. The bankruptcy court's finding of the absence of bad faith is reviewed under the clearly erroneous standard. *Wavelength,* 61 B.R. at 620.

## DISCUSSION

### A. Dismissal of Involuntary Cases Under § 305(a).

 The vast bulk of bankruptcy cases are commenced by the filing of a petition by a debtor, or the debtor and spouse, under the authority granted in §§ 301 and 302, respectively. But the Bankruptcy Code is not exclusively a remedy for debtors. By virtue of § 303, a chapter 7 or 11 bankruptcy case may be commenced against an unwilling debtor by its creditors under appropriate circumstances.[7] If the bankruptcy court orders relief, creditors benefit from potent protections afforded to them by the Code, including, depending upon the facts, appointment of a trustee to manage or liquidate a debtor's assets, investigation of the debtor's financial affairs,

have awarded Macke's attorney's fees and costs as "damages" under § 303(i)(2), or as "sanctions" under the court's § 105(a) inherent powers. Section 303(i) clearly delineates between attorney's fees and costs (subsection (1)) and damages (subsection (2)). And the Ninth Circuit has described "damages" as either compensatory damages, such as "items of loss of business during and after the pendency of the case, and so on," or punitive damages. *Miles v. Okun (In re Miles),* 430 F.3d 1083, 1091 (9th Cir.2005). Finally, Macke did not assert that it had incurred any actual damages, or that the bankruptcy court should have awarded it the balance of its requested attorney's fees under either

§ 303(i)(2) or § 105(a). Therefore, we conclude Macke has waived any such issues. *Doty,* 37 F.3d at 548.

7. That involuntary petitions are relatively rare can be seen from a review of the 2005 statistics, which show that there were 1,325,400 voluntary petitions filed under chapters 7 and 11, while only 563 involuntary petitions were filed. Administrative Office of the United States Courts, U.S. Bankruptcy Courts. Voluntary and Involuntary Cases Filed by Chapter of the Bankruptcy Code, *http://www. uscourts.gov/judicialfactsfigures/2005/Table 702.pdf* (last visited May 11, 2007).

assertion of the avoiding powers to recover transfers to benefit all creditors, and application of the equitable disbursement scheme to the claims of creditors to ensure that all those similarly situated share equally.

The rules governing the commencement and prosecution of an involuntary bankruptcy case are collected in § 303. For example, this section establishes the eligibility for creditors seeking to file an involuntary petition, § 303(b)(1)-(4), and delineates the grounds for entry of an order for relief by the bankruptcy court if the petition is contested, § 303(h)(1)-(2).[8]

But being targeted by an involuntary bankruptcy petition is a disruptive and, in many cases, financially traumatic event for the alleged debtor. Resources, including time and money, must be diverted from other commitments to defend against the petition. Moreover, pending a resolution of the issues by the bankruptcy court, the alleged debtor exists in a financial interstice, necessarily uncertain of its future, restricted in its ability to make normal business decisions and plans. The pendency of the bankruptcy petition may cause suppliers, customers and investors to be reluctant to deal with the debtor. And even if adjudication of bankruptcy relief proves unwarranted, and the petition is eventually dismissed, the debtor may suffer considerable loss or damages from the process.

■■■■■ An involuntary petition that is sufficient on its face and which contains the essential allegations invokes the subject matter jurisdiction of the bankruptcy court. *Bakonyi v. Boardroom Info. Sys. (In re Quality Laser Works)*, 211 B.R. 936, 941 (9th Cir. BAP 1997), *aff'd mem.*, 165 F.3d 37 (9th Cir.1998). In general, if the involuntary petition is uncontested, or if it is contested and the petitioner prevails after trial, the Code mandates that the "bankruptcy court *shall* order relief against the debtor." § 303(h) (emphasis added).

■■■■ But notwithstanding a bankruptcy court's jurisdiction over an involuntary case pursuant to § 303, § 305(a) provides that the bankruptcy court may dismiss an involuntary case, or suspend all proceedings in that case, and thereby decline[9] to exercise that jurisdiction. *See Eastman*, 188 B.R. at 624 (a pending chapter 7 case could be dismissed under § 707(a) or § 305(a)(1)); *In re Williamsburg Suites, Ltd.*, 117 B.R. 216, 218 (Bankr.E.D.Va. 1990) (dismissal pursuant to § 305 was appropriate even where petitioning creditors established a case for an involuntary bankruptcy); D. Epstein, S. Nickles & J. White, *Bankruptcy* § 2–5g (1992) ("[A]n involuntary petition that satisfies all of the requirements of section 303 can be dismissed under section 305. . . ."); 2 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 305.LH[2], at 305–12 to 305– 13 (15th ed. rev.2005) (Congress intended § 305 to apply primarily as a "mechanism to dismiss involuntary cases filed by dissident creditors who seek to disrupt ongoing negotiations between the debtor and its creditors.").

Here, Macke asked the bankruptcy court to dismiss the involuntary petition

---

**8.** In this case, Macke has not challenged the bankruptcy court's conclusion that Wechsler was a proper petitioner, nor that facts sufficient for entry of an order for relief were present.

**9.** Section 305 is entitled "Abstention," but this is the only reference to that term in this section. The substantive provisions make clear that the bankruptcy court's prerogatives under this section are limited to dismissal of the case or suspension of all proceedings in the case. *See* § 305(a)-(c).

filed by Wechsler under either § 303(i) or § 305(a). This latter section provides, in pertinent part, that the bankruptcy court may, after notice and a hearing, dismiss a bankruptcy case at any time if it finds that "the interests of creditors and the debtor would be better served by such dismissal." § 305(a)(1).

Because an order to dismiss under § 305(a) is not reviewable by the courts of appeal (*see* § 305(c)), such a dismissal is an "extraordinary remedy" of "narrow breadth," which may be utilized "to prevent the commencement and continuation of disruptive involuntary cases." 2 *Collier on Bankruptcy, supra,* ¶ 305.01[1], at 305–3; *Barnett v. Edwards (In re Edwards),* 214 B.R. 613, 620 (9th Cir.BAP1997) (citing *Eastman,* 188 B.R. at 624). An examination of the legislative history of § 305(a) indicates:

> The court may dismiss or suspend under the first paragraph, for example, if an arrangement is being worked out by creditors and the debtor out of court, there is no prejudice to the rights of creditors in that arrangement, and an involuntary case has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment.

H.R.Rep. No. 95–595 at 325 (1977); S.Rep. No. 95–989, at 35–36 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6281–82, 5787, 5820–22.

Typical circumstances for dismissing under § 305(a)(1) include the pendency of proceedings such as assignments for the benefit of creditors, *see In re Bailey's Beauticians Supply Co.,* 671 F.2d 1063 (7th Cir.1982), state court receiverships, *see In re Sun World Broadcasters, Inc.,* 5 B.R. 719 (Bankr.M.D.Fla.1980), or bulk sale agreements, *see In re Bioline Labs.,* 9 B.R. 1013 (Bankr.E.D.N.Y.1981). Another consideration is where there are few, if any, valuable nonexempt assets and the administrative expenses would likely consume the entire estate, *see In re Luftek, Inc.,* 6 B.R. 539, 549 n. 6 (Bankr.E.D.N.Y. 1980) (involuntary chapter 7).

The analysis as to whether "the interests of creditors and the debtor would be better served by such dismissal" is based on the totality of the circumstances. *Eastman,* 188 B.R. at 624. Before a court may refrain from exercising jurisdiction over an otherwise proper case, it must make specific and substantiated findings that the interests of the creditors and the debtor will be better served by dismissal or suspension. *See In re Spade,* 258 B.R. 221, 225 (Bankr.D.Colo.2001), *aff'd,* 269 B.R. 225 (D.Colo.2001); *see generally* 2 *Collier on Bankruptcy, supra,* ¶ 305.02[2] at 305–6 to 305–9.

In this case, the bankruptcy court's factual findings reflected its analysis of the totality of the circumstances, and supported its conclusion that those circumstances justified a § 305(a)(1) dismissal. Specifically, the bankruptcy court found that it had jurisdiction to order relief on the involuntary petition under § 303. However, it also found that this was essentially a two-party dispute; there was an out-of-court assignment for the benefit of creditors including a sale of Macke's assets; Wechsler did not participate in the assignment proceeding; there was an absence of a bankruptcy purpose or need to reorganize; there was pending litigation in another forum; and another forum would be more appropriate for the resolution of any lingering disputes between the parties. Significantly, the court also found that, in commencing the involuntary case, Wechsler was forum-shopping. Importantly, these factual findings and the bankruptcy court's decision to dismiss the involuntary case under § 305(a)(1) have not been chal-

lenged by the parties in either the appeal or cross-appeal.

### B. Section 303(i)(1) Attorney's Fees and Costs are Available in Connection With a § 305(a) Dismissal.

■ The primary issue raised by Wechsler's appeal is whether the bankruptcy court erred in its interpretation of the interplay between §§ 303 and 305(a)(1). In particular, Wechsler argues that the bankruptcy court erred when it awarded Macke attorney's fees and costs in connection with a "best interest" dismissal under § 305(a)(1). While Wechsler focuses on an issue of unsettled law, we conclude that the bankruptcy court correctly interpreted and applied the provisions of the Code.

The bankruptcy court followed the reasoning of *In re Kidwell,* 158 B.R. 203, 216–17 & n. 22 (Bankr.E.D.Cal.1993), and awarded the alleged debtor its attorney's fees and costs in a reduced amount of $20,000. Wechsler contends that it was contradictory for the bankruptcy court to refrain from exercising jurisdiction over the case in order to allow the parties to resolve their disputes outside the bankruptcy process and yet, at the same time, to award attorney's fees. *See Koffman v. Osteoimplant Tech., Inc.,* 182 B.R. 115, 127 (D.Md.1995) (holding that statutory scheme does not allow the parties "to have it both ways;" parties either resolve the issues in bankruptcy court or on their own outside of court.)

We disagree, and for the reasons that follow, we hold that the statutory scheme allows, and indeed preempts other causes of action for, relief against those who inap-

propriately invoke the involuntary bankruptcy process, whether the petition is dismissed under § 303 or via § 305(a)(1).[10] *See Miles v. Okun (In re Miles),* 430 F.3d 1083, 1091 (9th Cir.2005).

Attorney's fees and costs are expressly authorized under § 303(i):

(i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—

(1) against the petitioners and in favor of the debtor for-

(A) costs; or

(B) a reasonable attorney's fee; or

(2) against any petitioner that filed the petition in bad faith, for-

(A) any damages proximately caused by such filing; or

(B) punitive damages.

§ 303(i).

Although no circuit has directly addressed the issue of whether § 303(i) authorizes an award of fees upon a dismissal pursuant to § 305(a), several district and bankruptcy court decisions have reached conflicting conclusions regarding this question. The conflict arises because of the wording of § 303(i)(1). The phrase, "If the court dismisses a petition under this section," has been interpreted by some courts to mean, if the court dismisses a petition filed under § 303, or in other words, an involuntary petition. *See e.g., Kidwell,* 158 B.R. at 216–17. Other courts interpret the statute to apply only "if a

---

10. We note that § 305 authorizes the bankruptcy court to "dismiss the case" while § 303(i)(1) operates "[i]f the court dismisses a petition under this section...." Obviously, dismissal of the entire bankruptcy case effectively and necessarily dismisses the involun-

tary petition. Wechsler has not relied upon any distinction in the statutory language. In addition, we deem any variance in the terms in these two provisions to be without significance for purposes of our examination of this issue.

case is dismissed under section 303." *See Luftek,* 6 B.R. at 549 n. 6.

 While we do not have the benefit of a holding on this precise issue, Ninth Circuit case law offers considerable guidance. In interpreting § 303(i) generally, it held that "when an involuntary petition is dismissed on some ground other than consent of the parties and the debtor has not waived the right to recovery, an involuntary debtor's motion for attorney's fees and costs under § 303(i)(1) raises a rebuttable presumption that reasonable fees and costs are authorized." *Higgins,* 379 F.3d at 707. This holding makes clear that, although the Code has liberalized standards for instituting involuntary cases, because of the potential adverse impact on the debtor and the need to encourage discretion in filing such cases, unsuccessful involuntary petitioners should routinely expect to pay the debtor's legal expenses arising from the involuntary filing. *Id.* at 706; *Kidwell,* 158 B.R. at 217 (stating that "[t]he Congress drafted the statute to make an award of costs and fees the norm" and that petitioning creditors "should expect to pay the debtor's attorney's fees and costs if the petition is dismissed"). In addition, as a fee-shifting statute,[11] the court of appeals has emphasized that § 303(i) is intended to be the *exclusive* remedy for regulating abuse of the involuntary bankruptcy process. *Miles,* 430 F.3d at 1089–91.

In awarding fees and costs in this case, the bankruptcy court relied on the "plain meaning" of § 303 to link it to a § 305(a) dismissal. This interpretation was discussed in *Kidwell,* a § 303(i) case, in which the court observed that:

> There are only two charted safe harbors from the section 303(i) remedies: (1) dismissal with consent of the debtor and of all petitioners and (2) waiver by the debtor of the right to judgment. 11 U.S.C. § 303(i). All other dismissals are exposed to section 303(i) remedies, including, for example, dismissal pursuant to section 305 abstention based on the interests of creditors and the debtor being better served by dismissal.

*Kidwell,* 158 B.R. at 216; *cf. In re Trina Assocs.,* 128 B.R. 858, 873 (Bankr.E.D.N.Y. 1991) (the court entertained a motion for fees under § 303(i) following a § 305 abstention, then noting its discretion to do so, denied such fees) and *In re Kass,* 114 B.R. 308, 309 (Bankr.S.D.Fla.1990) (the court dismissed the involuntary petition under § 305, but retained jurisdiction to award the debtor fees and costs as appropriate); *In re R.V. Seating, Inc.,* 8 B.R. 663, 666 (Bankr.S.D.Fla.1981) (the court exercised its discretion to deny fees or damages, while noting that § 305 does not authorize such an award).

In *Kidwell,* the sole petitioner had circumvented the three-petitioner requirement by intentionally misrepresenting the total number of the alleged debtor's creditors. *Id.* at 207. Albeit in dictum, Judge Klein cogently explained that both §§ 303(i) and 305(a) target for dismissal

---

**11.** Federal courts ordinarily follow the "American Rule" under which "the prevailing party may not recover attorney's fees as costs or otherwise." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 245, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Only where Congress has specifically allowed fee shifting will this rule be abrogated, or under certain exceptions such as bad faith or common benefit. *See, e.g., Chambers v. NASCO, Inc.,* 501 U.S. 32, 45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Alyeska Pipeline,* 421 U.S. at 257–58, 95 S.Ct. 1612. In addition, the Supreme Court recently held that the American Rule can be overcome "by an 'enforceable contract' allocating attorney's fees." *Travelers Casualty & Surety Co. of America v. Pac. Gas & Elec. Co.,* ——— U.S. ———, 127 S.Ct. 1199, 1204, 167 L.Ed.2d 178 (2007).

the same type of "spoiler" petitioner. *Id.* at 216 n. 22. *See generally* I. Lacayo, *After the Dismissal of an Involuntary Bankruptcy Petition: Attorney's Fees Award to Alleged Debtors,* 27 CARDOZO L.REV. 1949, 1958–59 n. 34 (2006) (citing *Kidwell* and stating: "It seems the modern trend and preferred approach does make section 303(i) awards available after a section 305 dismissal."). While not an issue to be decided, consistent with the reasons for applying the provision in its case, the *Kidwell* court suggested that § 303(i)(1) should also be applicable after a dismissal under § 305 because:

> The Congress drafted the statute to make an award of costs and fees the norm. While the better view is that such awards are discretionary and not mandatory, courts exercise their discretion in light of two factors. First, the progenitor of section 303(i)(1) is former Bankruptcy Rule 115(e), which makes such awards "routine." Second, the statute makes plain that bad faith is not relevant unless consequential and punitive damages are under consideration.

*Kidwell,* 158 B.R. at 217 (citing *In re Kearney,* 121 B.R. 642, 644–45 (Bankr. M.D.Fla.1990); *In re Anderson,* 95 B.R. 703, 704–05 (Bankr.W.D.Mo.1989); *In re Johnston Hawks, Ltd.,* 72 B.R. 361, 365

(Bankr.D.Hawaii 1987), aff'd, 885 F.2d 875 (9th Cir.1989)).

In *Higgins,* a § 303(i) dismissal case, the Ninth Circuit quoted *Kidwell* with approval: "Although we adopt the totality of the circumstances test as the appropriate standard under § 303(i)(1), we do not abandon the premise that 'any petitioning creditor in an involuntary case . . . should expect to pay the debtor's attorney's fees and costs if the petition is dismissed.' " *Higgins,* 379 F.3d at 707 (quoting *Kidwell,* 158 B.R. at 217). To this end, *Higgins* established a rebuttable presumption that reasonable fees and costs are authorized in order "to reinforce the idea" that involuntary petitions "should not be lightly undertaken," and "to discourage inappropriate and frivolous filings." *Id.* (citations omitted).

We believe that the case law and authorities which deny attorney's fees and costs for a § 305(a) dismissal generally do not interpret § 303(i) correctly, are not in harmony with the abstention option, or fail to distinguish between the presumptive attorney's fees and costs provisions of § 303(i)(1) and the damages provisions of § 303(i)(2). *See Koffman,* 182 B.R. at 127 (concluding fees and costs may not be awarded after a § 305 dismissal because the legislative history indicates damages are not to be awarded in such an instance);[12] *Luftek,* 6 B.R. at 549 n. 6 (con-

---

**12.** *Koffman* relies on the legislative history of § 303(i), which explains that this provision "permits the court to award costs, reasonable attorney's fees, *or* damages," and delineates two kinds of damages as "those that may be caused by the taking of possession of the debtor's property, under certain conditions— (*i.e.,* former § 303(i)(1)(C), which was deleted by the Bankruptcy Act of 1986)-or those damages proximately caused by filing a petition in bad faith." H.R.Rep. No. 95–595 at 324 (1977); S.Rep. No. 95–989 at 3 (1978), U.S.Code Cong. & Admin.News 1978, pp. 6280–81, 5788–90(emphasis supplied). The legislative history further instructs that "[d]ismissal in the best interests of creditors under

section 305(a)(1) would not give rise to a *damages* claim." *Id.* On the one hand, it can be argued that the legislative intent is not apparent from this report as to whether costs and attorney's fees may be recovered under § 303(i)(1) for a § 305(a) dismissal. *See* W. Norton, Jr. & W. Norton III, *Norton Bankr. Law & Prac.2d: Bankruptcy Code* § 303(i), Editors' Cmt. to 1978 House and Senate Reports (2006–2007 ed.). But it can also be argued that, by expressly indicating in the report that only *damages* are unavailable, Congress implicitly intended that attorney's fees and costs could be recovered, assuming the bankruptcy court exercised its discretion

cluding without analysis that fees and costs are not appropriately awarded unless the petition is dismissed under § 303); *Matter of Goldsmith,* 30 B.R. 956, 959 (Bankr.E.D.N.Y.1983) (concluding without analysis that attorney's fees, costs, and damages are not available to the debtor if the court abstains from hearing the involuntary petition); *In re Sun World Broadcasters, Inc.,* 5 B.R. 719, 723 (Bankr. M.D.Fla.1980) (summarily concluding that "[t]he court holds that the costs and fees allowable under § 303(i) are not possible in a case that is dismissed under § 305"); *In re R.V. Seating, Inc.,* 8 B.R. 663, 666 (Bankr.S.D.Fla.1981) (relying on *In re Sun World Broadcasters* and *Luftek* to conclude "that § 305, unlike § 303, does not authorize the Court to award damages, attorney's fees, or costs[.]").

■■■■ To resolve this conflict in the case law we must examine the language of § 303(i). The first step in statutory interpretation is "to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). When statutory language is plain, "the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)).

Only if there is an ambiguity in the language do we look to the legislative history for resolution. *Barnhill v. Johnson,* 503 U.S. 393, 401, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992). "Whether a statute is ambiguous is 'determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *Hough v. Fry (In re Hough),* 239 B.R. 412, 414 (9th Cir. BAP 1999) (quoting *Robinson,* 519 U.S. at 341, 117 S.Ct. 843).

Section 303(i) provides, in pertinent part, that attorney's fees may be awarded "[i]f the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection...." The phrase "other than on consent of all petitioners and the debtor," modifies the antecedent phrase "[i]f the court dismisses a petition under this section." Importantly, the words "under this section" immediately follow the word "petition," not "dismisses." All involuntary petitions are filed under § 303. Therefore, we read the statute such that the word "dismisses" is modified only by the words "other than on consent of all petitioners and the debtor [etc.]."

■■■■ This interpretation is supported by principles of statutory construction. Under the canon *reddendo singula singulis,* "Where a sentence contains several antecedents and several consequents

to make such an award under the facts presented in a specific case.

The *Collier* editors also rely upon the legislative history of § 303(i) for their conclusion that "the better argument, despite the possibility of some harsh results in select cases, is that abstention under section 305 precludes a recovery of money under section 303(i)." 2 *Collier on Bankruptcy, supra* ¶ 303.15[11], 303–127–303–128. However, as *Collier* also points out: "by virtue of the wording of paragraphs (1) and (2), there is a distinction be-

tween fees and costs, and damages. The distinction is significant because damages can be recovered only in the context of a bad faith filing." *Id.* at ¶ 303.15[4][a], 303–118. Thus, as we note above, reliance upon the congressional statement that damages are not to be awarded when a case is dismissed under § 305 is misplaced, because it is not clearly indicative of Congress' intent regarding attorney's fees and costs that are set forth in separate paragraphs of the Code.

they are to be read distributively. The words are to be applied to the subjects that seem most properly related by context and applicability." *Hough*, 239 B.R. at 415 (quoting 2A Norman J. Singer, *Sutherland Stat. Constr.* § 47:26 (5th ed.1992)). Also known as the "doctrine of the last antecedent," this interpretive aid has been described as providing that the "limited or restrictive clause contained in the statute is generally construed to refer to and limit and restrict [the] immediately preceding clause or the last antecedent" unless "something in the subject matter or dominant purpose of the statute requires a different interpretation." *Sutherland Stat. Constr., supra*, § 47:26.

In addition, the doctrine of "whole statute" interpretation requires that "a subsection may not be considered in a vacuum, but must be considered in reference to the statute as a whole and in reference to statutes dealing with the same general subject matter." *Id.* § 46:5. In this instance, both § 303(i)and § 305(a)(1) are intended to deal with involuntary petitioners who, as in this case, improperly seek to impose the consequences of bankruptcy on an unwilling debtor. *See, e.g., Kidwell*, 158 B.R. at 216–17.

Applying these principles to § 303(i), the term "dismisses" is the antecedent that is modified by the entire phrase "other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection." Moreover, it would make little sense for the phrase "other than on consent of all petitioners and the debtor [etc.]" to modify the entire antecedent phrase "dismisses a

petition *under this section*," because the "consent" exception is not otherwise specified as a ground for dismissal under § 303. In addition, "under this section" modifies "petition" making clear that the provision applies only to involuntary petitions that are dismissed.

One other point deserves mention. Section 303(i)(1) provides for a discretionary award of attorney's fees and costs. The bankruptcy court is not compelled to make such an award. For example, in this case, an experienced bankruptcy judge carefully evaluated the relevant facts, motives and conduct of the parties (*i.e.*, the "totality of circumstances") to determine if an award of litigation expenses to the alleged debtor furthered the purposes and policies of the Code. The bankruptcy court determined that the filing of the involuntary petition was motivated by the petitioning creditor's desire to find a more sympathetic forum to continue its fight against the debtor. At the time Wechsler filed the involuntary petition, Macke had no assets, no ongoing business to reorganize, and all its creditors, other than Wechsler, had elected to participate in a pre-filing assignment of Macke's assets for their benefit. Even though, based upon its judgment, Wechsler was qualified to file an involuntary petition against Macke, *see* § 303(b), and Macke was, obviously, "generally not paying [its] debts as such debts became due," § 303(h)(1), the reality was that Macke did not belong in a chapter 11 case.[13]

By the same token, in a closer case, where more traditional grounds are presented to place a debtor in bankruptcy

---

13. To us, Wechsler's choice to file his involuntary petition under chapter 11 (a reorganization), rather than chapter 7 (a liquidation), casts additional doubt on his motives. *See* § 303(a) (authorizing an involuntary petition under either chapter 7 or 11). A chapter 11 case generally serves to preserve the going-

concern value of a business while a plan to pay creditors is formulated, usually by existing management. Under these facts, there was no realistic prospect for a feasible plan. Management had already implemented a plan to deal with creditors: the assignment for the benefit of creditors followed by a liquidation

against its will, even if the bankruptcy court declines to exercise its jurisdiction, the bankruptcy judge may exercise discretion against an award of attorney's fees and costs. Clearly, then, because of the discretionary nature of § 303(i)(1), there is little prospect that our interpretation of the attorney's fees provisions of 303(i) will deter creditors with a legitimate need for the protections provided by the Bankruptcy Code from pursuing an involuntary petition.[14]

The Ninth Circuit indicated in *Higgins* that those who prosecute an involuntary bankruptcy petition against a debtor should expect, if unsuccessful, to compensate that debtor for the costs of defending. *Higgins*, 379 F.3d at 707. The facts of this case demonstrate why this approach is the correct one. As the bankruptcy court found, this involuntary chapter 11 petition

had no legitimate goal, and "would only lead to administrative expenses, and would be a waste of judicial resources."

We hold that the plain meaning of § 303(i) provides that, unless an involuntary petition has been dismissed with the parties' consent, and without the debtor's waiver of the right to judgment under § 303(i), the bankruptcy court, based upon the totality of the circumstances, may, in its discretion, award attorney's fees and costs under § 303(i)(1) for a § 305(a)(1) dismissal of an involuntary petition.[15] The bankruptcy court did not abuse its discretion in awarding Macke attorney fees and costs against Wechsler in this case.

## C. The Reduced Fee Award Was Not An Abuse of Discretion

In the cross-appeal, Macke contends that the bankruptcy court abused its

---

sale and distribution of the asset sale proceeds. The involuntary petition here was too late to benefit creditors, suggesting it may have been solely a litigation tactic.

14. In arguing that an award of attorney's fees and costs are not available to Macke under these circumstances, our colleague in dissent suggests that "[§ ]305(a)(1) is a benign dismissal statute." Of course, it is only when the alleged debtor or some other interested party convinces the bankruptcy judge that dismissal better serves the interests of all parties that an award will be available, and presumably only then when that bankruptcy judge is also persuaded that such an award is warranted. If the petitioning creditor's motives are pure, and prospects are good for an out-of-bankruptcy solution, denying fees and costs to the alleged debtor is appropriate. But here the bankruptcy court found that Wechsler's intentions for filing the involuntary petition were not benign.

We also disagree with the dissent's concern that allowing the bankruptcy court discretion to award fees and costs in this setting would "chill out-of-court workouts" or deter nonbankruptcy answers to a debtor's financial problems. Here the award of fees and costs is compensatory, not punitive. Moreover, we think the prospect that an unsuccessful peti-

tioner may be ordered to reimburse the alleged debtor's legal expenses will promote, not discourage, the parties to resort to non-bankruptcy solutions (*e.g.*, the assignment for the benefit of creditors attempted by Macke, here).

15. Because we conclude the statute's plain meaning allows for an award of fees and costs in this context, we need not rely upon the legislative history for guidance. However, because other courts have considered it, we note that both the Ninth Circuit in *Higgins* and the legislative history support an interpretation of § 303(i)(1) that the only exceptions to a potential award of fees and costs to the alleged debtor after dismissal of the involuntary petition is when the petition is dismissed on the consent of the petitioning creditors and the debtor, or the debtor waives the right to an award of fees and costs. See *Higgins*, 379 F.3d at 707; H.R.Rep. No. 95–595 at 324 (1977); S.Rep. No. 95–989 at 34 (1978), U.S.Code Cong. & Admin.News 1978, pp. 6280–81, 5819–20.

Moreover, as we discuss above, *supra* n. 12, the legislative history does not clearly indicate that attorney's fees and costs cannot be awarded when a dismissal comes via § 305(a).

discretion in determining the amount of attorney's fees and costs awarded. Macke maintains that it should receive the entire requested amount of $39,678. However, this argument ignores the bankruptcy court's unchallenged factual finding that a reduction was appropriate because both sides had "ridiculously overworked" the case.

■■■■ The customary method for assessing the amount of reasonable attorney's fees to be awarded in a bankruptcy case is the "lodestar." Under this approach, " 'the number of hours reasonably expended' is multiplied by 'a reasonable hourly rate' for the person providing the services." *Eliapo*, 468 F.3d at 598 (citations omitted). A bankruptcy court may consider the "quality and efficiency of counsel's services" in order to determine the appropriate lodestar rate. *Dawson v. Wash. Mut. Bank, F.A. (In re Dawson)*, 390 F.3d 1139, 1152 (9th Cir.2004).

■■■■ Generally, a bankruptcy court has broad discretion to determine the number of hours reasonably expended. "[E]ven where evidence supports [that] a particular number of hours [were] worked, the court may give credit for fewer hours if the time claimed is 'excessive, redundant, or otherwise unnecessary.' " *Id.* (citation omitted).

Macke reminds us that the motion to dismiss was complex, fact-intensive, and required declaratory evidence. In all, the motion was 24 pages long, was accompanied by multiple exhibits, and cited over 40 cases, statutes, rules and treatises. The motion alleged that Wechsler's response was replete with inaccuracies which it felt it then had to address in a 21–page reply. Macke's supplemental brief spanned 29 pages. Macke further maintains that the rejected bad faith issue was pressed by Wechsler's voluminous responses and documentary evidence and was a necessary alternative defense in view of the unsettled state of the law.

But, in reality, the complexity of the motion was occasioned in large part by Macke's reliance upon alternative theories. If the bankruptcy court had not ruled under § 305, or had it not determined the existence of bad faith, the stream of papers might have been justified, but it did not. It was not error for the bankruptcy court to evaluate Macke's fee request based upon the law it actually applied, and not based on all the possible theories and issues potentially implicated by the parties' arguments.

Furthermore, Campbell apparently did not file an updated fee statement to support the additional 18 hours, or $5,850 in fees, Macke sought.

■■■■ Finally, the fee request was based upon Campbell's charges of $325 per hour for 120 hours of work. To the Panel, it appears many of the submissions could have been prepared by less experienced, and less expensive, counsel. Excessive use of senior partner rates in research may also justify a reduction. *In re Allen–Main Assocs., Ltd. P'ship*, 243 B.R. 606, 609 (Bankr.D.Conn.1998).

The bankruptcy court was obviously familiar with the issues, facts, and law in this case. We can not conclude that the bankruptcy court abused its broad discretion when it awarded Macke $20,000, as opposed to a higher amount, for attorney's fees and costs.

### D. Wechsler Should Not Be Allowed Setoff.

■■■■ Wechsler contends that the bankruptcy court abused its discretion in not allowing him to offset the $20,000 fee award against the judgment debt owed to him by Macke. *See* § 553(a). He cites *In re Apache Trading Group, Inc.*, 229 B.R.

887 (Bankr.S.D.Fla.1999) to support his argument.

In *Apache,* the bankruptcy court looked at three reported decisions concerning a petitioning creditor's right to offset an award of fees, costs or damages arising from an involuntary filing under § 303(i) against the claim held by the petitioning creditor against the alleged debtor.

In *In re Schiliro,* 72 B.R. 147 (Bankr. E.D.Pa.1987), the bankruptcy court rejected the creditor's right of setoff for strong public policy reasons. It held:

> If the petitioning creditor could suffer no other recourse except a reduction in his probably-uncollectible judgment as a penalty for requiring a debtor to defend an unjustified case, and Congress has specifically stated should result in such a penalty, the disincentive built into the system to discourage such actions would evaporate. The rule sought by [the petitioning creditor] would surely be a boon to creditors who seek to wear down to submission small debtors such as the Debtor here.

*Id.* at 149. *Accord In re K.P. Enter.,* 135 B.R. 174, 185 (Bankr.D.Me.1992).

The bankruptcy court in *In re Better Care, Ltd.,* 97 B.R. 405 (Bankr.N.D.Ill. 1989) disagreed with those policy reasons because it believed that the § 303(i) fees and costs were purely compensatory in nature and akin to damages, for which setoff should be available. *Id.* at 414–15. The court determined that setoff would be premature, however, where the merits of the petitioning creditor's claim had not yet been resolved. *Id.* at 415.

The *Apache* court then held that setoff was the most *practical* option because there the involuntary petitioner did not act in bad faith. The alternative, it said, would be for the petitioner to convert his liquidated claim to judgment and then proceed to collect from the alleged debtor. "This would be an exercise in futility," the court held. *Apache,* 229 B.R. at 890.

As discussed above, in the Ninth Circuit, the presumption is that, upon dismissal of an involuntary petition, attorney's fees and costs are to be awarded to the alleged debtor whether or not the filing was in bad faith. Given this presumption, and the policy implications flowing from a decision to allow a setoff, we find that *Schiliro* yields the better result.

In *Schiliro,* the bankruptcy court analogized an award under § 303(i) to statutory damages awarded a debtor for a creditor's violation of the Truth in Lending Act ("TILA"). *Schiliro,* 72 B.R. at 149–51. In *Riggs v. Gov't Employees Fin. Corp.,* 623 F.2d 68 (9th Cir.1980), the Ninth Circuit held that allowing lenders to subtract TILA awards from amounts owed them by debtors would eliminate any incentive to pursue TILA claims by bankruptcy trustees and effectuate the statute's deterrent purpose. *Id.* at 74. TILA's enforcement provisions are both remedial and penal in nature. *See Yamamoto v. Bank of New York,* 329 F.3d 1167, 1171 (9th Cir.2003). Section 303(i) is also remedial in nature—the monetary remedies make it expensive for a petitioning creditor to file an invalid petition. *See Miles,* 430 F.3d at 1090; *Higgins,* 379 F.3d at 706–07.

The consensus of courts is that a setoff of this sort is impermissible. 2 *Collier on Bankruptcy, supra,* ¶ 303.15[8], at 303–125. If setoff were allowed, there would be little downside to a creditor's resort to an involuntary bankruptcy petition against a debtor, even if its conduct did not rise to the level of "bad faith."

Therefore, given the remedial purpose behind, and wide latitude granted to the bankruptcy court by, § 303(i), we conclude that the bankruptcy court did not abuse its

discretion in denying Wechsler's setoff request.[16]

### E. The Bankruptcy Court Did Not Err in Denying Punitive Damages Based on Bad Faith Pursuant to § 303(i)(2).

In its cross-appeal, Macke asserts that the bankruptcy court erred in failing to find bad faith on Wechsler's part. Macke maintains that the court incorrectly applied the legal standard, and that its factual findings actually supported a finding of bad faith. Thus, it contends that the bankruptcy court should have granted its demand for punitive damages.

We affirm the bankruptcy court's denial of punitive damages because we conclude that the bankruptcy court's findings of fact were not challenged as being clearly erroneous and the court applied the correct legal standard for bad faith.[17]

Punitive damages are awardable "against any petitioner that filed the petition in bad faith." § 303(i)(2). In the Ninth Circuit, the bankruptcy court can allow punitive damages without having to award compensatory or actual damages, or in addition to those damages. *Wavelength,* 61 B.R. at 621.

Macke maintains that the bankruptcy court's written findings of fact were not clearly erroneous. Nonetheless, it contends that the court applied the incorrect legal standard because the factual findings should have yielded a determination of bad faith under the objective, "reasonable person" standard set forth in *Wavelength,* 61 B.R. at 620 (analyzing bad faith under 303(i)). In particular, Macke contends that the court's findings that this was a two-party dispute, the filing of the involuntary petition had no legitimate bankruptcy purpose, and was forum shopping, all constituted unreasonable conduct and bad faith.

Clearly the bankruptcy court applied the objective, reasonable person standard articulated in *Wavelength;* indeed, it cited that case in its Tentative Ruling. And while the bankruptcy court did make the above findings, it also found that "the evidence presented by Wechsler that Macke may be doing business abroad and conducting business through other websites, ... can ... be addressed in another forum." Tentative Ruling at 11–12. At the hearing, the bankruptcy court also referred to declaration evidence concerning Macke's continued product advertising and

---

**16.** While we endorse the bankruptcy court's refusal to endorse an offset for policy reasons, it is also doubtful Wechsler had a statutory right to set off the attorney's fee award against its prebankruptcy claim against Macke. The Code allows an offset only as to "a mutual debt owing by such creditor to the debtor *that arose before the commencement of the case ....*" § 553(a). Of course, Wechsler's debt to Macke arose after the commencement of the involuntary case. *Riggs v. Stovin (In re Luz Int'l),* 219 B.R. 837, 843–44 (9th Cir. BAP 1998).

**17.** For purposes of this discussion, we presume without deciding that § 303(i)(2) damages are available to an alleged debtor who proves a creditor filed an involuntary petition in bad faith, whether that petition is dismissed for failure to establish a required element under § 303, or better to serve the interests of the parties under § 305(a)(1). We also note that the Supreme Court recently held that a bankruptcy court has inherent power to prevent dishonest parties from proceeding with a bankruptcy case if their bad-faith prepetition conduct justifies a "forfeiture" of their rights under the Code. *See Marrama v. Citizens Bank of Mass.,* — U.S. —, 127 S.Ct. 1105, 1111–12, 166 L.Ed.2d 956 (2007)(a chapter 7 debtor does not have the absolute right to convert to chapter 13 under § 706(a) if a bad-faith dismissal is appropriate.) Regardless of the source of its authority, our decision to affirm the bankruptcy court's denial of punitive damages and reasons for it would be the same.

possible continuing sales, post assignment: "[T]here is quite a bit of evidence here that leads me to believe that something is going on. And that therefore, it's not bad faith for the creditor to seek a forum to have that evidence reviewed." Hrg. Tr. 21:9–12. The court's order incorporated its oral and written findings. These additional findings were neither clearly erroneous nor inconsistent. A finding is not clearly erroneous if two permissible views of the evidence are possible. *Beauchamp v. Hoose (In re Beauchamp)*, 236 B.R. 727, 729–30 (9th Cir. BAP 1999), *aff'd*, 5 Fed. Appx. 743 (9th Cir.2001).

[█] The overall facts and circumstances, particularly in light of the assignment for the benefit of creditors, showed that there was no legitimate reorganization potential for Macke under chapter 11, and that Wechsler was forum-shopping. However, the bankruptcy court also found that Wechsler might have legitimate reasons to litigate pending disputes concerning Macke's ongoing activities in other, more appropriate forums. Not every failed reason for filing an involuntary petition amounts to "bad faith."

On these facts, while we might reach a different conclusion, a reasonable person could conclude that Wechsler did not file the involuntary petition in bad faith. The bankruptcy court announced and applied the correct legal standard and did not clearly err in finding an absence of bad faith on Wechsler's part. Having determined that the involuntary petition was not filed in bad faith, the bankruptcy court did not err in denying Macke's demand for punitive damages.

## CONCLUSION

The bankruptcy court's award of Macke's attorney's fees and costs pursuant to § 303(i)(1), when it dismissed the involuntary case under § 305(a)(1), was authorized under the plain meaning of the statute and in view of the statutory scheme to prevent abusive filings of involuntary petitions.

The bankruptcy court did not abuse its discretion in awarding Macke reasonable attorney's fees of, and reducing the requested attorneys' fee award to, $20,000 based on what it determined was an appropriate lodestar under the circumstances of the case and its outcome. Nor did it abuse its discretion in denying Wechsler's request to offset this award against the Macke judgment.

The bankruptcy court's finding of no bad faith was based on the proper legal standard and was not clearly erroneous and, thus, supported its denial of punitive damages.

We therefore AFFIRM the bankruptcy court's October 24, 2005 order in its entirety.

**AFFIRMED.**

MARLAR, Bankruptcy Judge, dissenting in part and concurring in part:

I respectfully dissent from the panel's conclusion that § 303(i)(1) attorney's fees and costs are allowable for a § 305(a) dismissal. To my mind, to conclude otherwise illustrates how a logical syllogism can be crafted to undo the clear intention and meaning of a statute.

Section 305(a)(1) is a benign dismissal statute as plainly written. Its focus encompasses any reason which is in the best interests of the creditors and the debtor. Sanctions of any type would, among other things, chill out-of-court workouts, be a disincentive to dismiss cases not worthy of a full-blown administrative procedure, or militate against dismissal of cases which are proceeding efficiently in another forum.

It is apparent that § 303(i) provides a continuum of sanctions for the unsuccessful petitioner, from a simple award of attorney's fees on one end of the spectrum to compensatory and punitive damages for bad-faith petitioners on the other. *See Miles,* 430 F.3d 1083, 1090; *Kidwell,* 158 B.R. at 213; *see also* 1 *Norton Bankr.L. & Prac.2d, supra,* § 21:16 ("The court may grant any or all of the damages provided for under Code § 303(i), and such damages may be alternatively or cumulatively assessed."). I see no purpose in delving into the legislative history of § 303(i) in order to analyze a perceived and gossamer-thin "distinction" between "damages" and "fees and costs," when it comes to understanding that § 305(a)(1) simply does not require any judicial assistance or enlargement.

As I read the language of § 303(i), its remedies clearly apply only to *dismissals* of petitions "under this section." The majority has somewhere located and painstakingly applied the "last antecedent rule" by ignoring the words "under this section" as limiting the word "dismisses." But the doctrines of statutory construction would not render any statutory terms inoperative or superfluous. *Sutherland Stat. Constr., supra,* § 46:06. The Ninth Circuit has held that "[w]hen ... the doctrine of the last antecedent is inconsistent with the plain language and the legislative history of the statute, a court must adhere to a logical plain reading of the statute." *Am. Fed. of Gov't Employees, AFL–CIO Local 2152 v. Principi,* 464 F.3d 1049, 1055 (9th Cir.2006).

Nor would the "whole statute" interpretation apply to link §§ 305 and 303, because, while § 305(a)(1) is utilized to dismiss involuntary as well as voluntary cases, it says nothing specifically about the dismissal of involuntary petitions, nor about awarding fees upon dismissal. In addition, where Congress has inserted language in one statute (the remedial and fee-shifting language of § 303(i)), but has excluded it in another (§ 305(a)), the panel should not imply the language as being included in that from which it was excluded. *Sutherland Stat. Constr., supra,* § 46:05. Section § 303(i) clearly provides compensation to an alleged debtor for dismissals of involuntary petitions under § 303 ("this section"), while § 305(a) neither provides for attorney's fees and costs, nor does it refer the practicing bar back to § 303(i) as a guide for the assessment of fees and costs in the event of a dismissal.

"[T]he circumstances under which attorney's fees are to be awarded and the range of discretion of the courts in making those awards are matters for Congress to determine.... Congress itself presumably has the power and judgment to pick and choose among its statutes and to allow attorney's fees under some, but not others." *Alyeska Pipeline,* 421 U.S. at 262–63, 95 S.Ct. 1612.

Logically, it seems apparent that Congress wanted to encourage out-of-court cooperation and other resolution of creditors' claims and thus declined to impose any monetary sanctions or attorney's fees under the many iterations of a § 305(a) dismissal, when that result is determined to be, simply, in the best interests of both creditors and the debtor. "[T]here is no need to invoke the machinery of the bankruptcy process if there is an alternative means of achieving the equitable distribution of assets." *In re Michael S. Starbuck, Inc.,* 14 B.R. 134, 135 (Bankr. S.D.N.Y.1981). A § 305(a)(1) dismissal is just a dismissal, nothing more or less. It is neither mystical nor sinister, nor does it summon forth all the awesome machinery of a court's inherent equitable powers. Cases are dismissed for all kinds of reasons, and § 305(a) facilitates this process.

Congress left this option open because it was aware that debtors and their creditors might be able to resolve their financial troubles more quickly and inexpensively outside of the bankruptcy court, if they were left without the worry of which side had to pay fees. *See generally* S. Block–Lieb, *Why Creditors File so Few Involuntary Petitions and Why the Number is Not Too Small*, 57 BROOK. L.REV. 803 (1991).

The weight of authority holds that the § 303(i) attorneys' fee awards are not available in § 305 dismissals. *See Koffman*, 182 B.R. at 127 (exercising jurisdiction to award fees after abstaining from jurisdiction would be "paradoxical"); *In re Iowa Coal Mining Co.*, 242 B.R. 661, 673 (Bankr.S.D.Iowa 1999); *R.V. Seating*, 8 B.R. at 666 (stating that another reason to deny attorney's fees or damages was that there was no authorization in § 305(a)); *Sun World Broadcasters*, 5 B.R. at 722; *Luftek*, 6 B.R. at 549 & n. 6; 2 *Collier on Bankruptcy*, *supra*, ¶ 303.15[11], at 303–127 to 303–128 ("Thus, the better argument, despite the possibility of some harsh results in select cases, is that abstention under section 305 precludes a recovery of money under section 303(i)."); 1 *Norton Bankr.L. & Prac.2d*, *supra*, § 21:16 (a court may not make such an award of costs, fees and damages under § 303(i) if it dismisses an involuntary petition pursuant to Code § 305) [18]; Hon. Alan M. Ahart, *Cal. Prac. Guide: Enforcing Judgments and Debts* § 5:294 (2006) ("Also, unlike a nonconsensual dismissal (11 USC § 303(i)), there is no provision in § 305 for assessing costs and damages against any of the petitioners."); D. Epstein, S. Nickles & J. White, *Bankruptcy*, § 2–5g at 35 (1992). *But see Kidwell*, 158 B.R. at 216–17.

---

**18.** This appears to be a change from the *Norton* Editors' Comment to the legislative history of *former* § 303(i), *see supra* at n. 12, which

In summary, I would hold that the plain language of each statute governs each independently, such that § 303(i)(1) cannot be engrafted onto § 305(a) for policy or equitable reasons. If Congress had wanted a § 305(a)(1) dismissal to include optional fee awards similar to a § 303(i) dismissal, it would have said so. It did not. Moreover, Macke risked denial of its attorney's fees and costs by pleading in the alternative and prevailing under the more compassionate statute.

After careful consideration, I conclude that no attorney's fees and costs are authorized for a 305(a)(1) dismissal and, therefore, I would reverse the bankruptcy court's opposite ruling on that issue. For that reason, I must dissent from the path chosen by my colleagues on this issue only.

On each of the other issues discussed in the opinion, I concur and join the majority.

stated that the contraindication for an award of damages under § 305 might not encompass attorney's fees and costs.