

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>MEHR GROUP OF COMPANIES<br>HOLDING, INC.,<br>    Debtor. | BAP Nos. CC-23-1202-CLS<br>CC-23-1203-CLS<br>(Related Appeals)<br><br>Bk. No. 8:23-bk-10760-SC |
| LAW OFFICES OF JAENAM COE, PC,<br>    Appellant,<br>v.<br>KAREN S. NAYLOR, former Chapter 11<br>Trustee; MEHR GROUP OF<br>COMPANIES HOLDING, INC.; JAVAD<br>MEHRVIJEH; UNITED STATES<br>TRUSTEE, SANTA ANA,<br>    Appellees. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Scott C. Clarkson, Bankruptcy Judge, Presiding

Before: CORBIT, LAFFERTY, and SPRAKER, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

## INTRODUCTION

This case involves two related appeals. In the first, the Law Offices of Jaenam Coe PC ("Coe[1]"), the law firm for the now dismissed chapter 11[2] debtor appeals the bankruptcy court's order awarding it $5,000 in attorney's fees and costs and directing it to remit the balance of its retainer funds to the former chapter 11 trustee. Because the fee award was not an abuse of discretion, we AFFIRM.

In the second, Coe appeals the bankruptcy court's order sanctioning the debtor and the debtor's principal. However, Coe is appearing solely on its own behalf, Coe is not representing the debtor in these appeals, and Coe was not sanctioned. Because Coe cannot establish standing to appeal the sanctions order we DISMISS this appeal.

## FACTS[3]

### A.    The Debtor's bankruptcy case.

Mehr Group of Companies Holding, Inc. (the "Debtor") leased and remodeled commercial real estate and sublet the spaces to professionals in

---

[1] For the sake of clarity and to distinguish Jaenam Coe from the Law Offices of Jaenam Coe, the memorandum refers to Jaenam Coe as Mr. Coe and the law firm as Coe. As detailed in the Facts section, the bankruptcy court did not always distinguish between the law firm and Mr. Coe.

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[3] We exercise our discretion to take judicial notice of documents electronically filed in Debtor's proceeding and the main bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

the beauty and health industry. On April 17, 2023, Debtor filed a chapter 11 petition. Javad K. Mehrvijeh (the "Debtor's Principal") signed the petition as CEO and Mr. Coe signed the petition as attorney for Debtor. In a status report, Debtor informed the bankruptcy court that Debtor leased ten properties ("Leased Premises"), that Debtor was behind in paying rent for some of the Leased Premises, and some of the lessors ("Landlords") had begun pursuing state law remedies including filing unlawful detainer actions against Debtor in state court. Consequently, Debtor's bankruptcy plan included rejecting four leases so Debtor could retain the most profitable locations.

1. **The United States Trustee's motion to dismiss or convert.**

Less than a month after Debtor filed its bankruptcy case, the United States Trustee ("UST") filed a motion to dismiss or convert the case to chapter 7 based upon Debtor's failure to provide evidence of insurance on the Leased Premises. Debtor subsequently provided the UST with certificates of insurance for each of the Leased Premises listing the UST as an interested party. Believing that Debtor had cured the deficiencies, the UST voluntarily dismissed the motion.

The Debtor filed amended monthly operating reports for April, May, and June that included the insurance information, affirming that Debtor had casualty/property insurance and general liability insurance for each of the Leased Premises. Debtor also affirmed that the insurance premiums were current for each of the Leased Premises. Each of Debtor's monthly operating

reports (as originally filed or as amended) were signed by both Debtor's Principal and Mr. Coe.

### 2. The Bankruptcy court orders Coe to hold disputed rent funds in a trust account.

Following a July 21, 2023, status conference that addressed numerous irregularities and disputes in the management of the Debtor's case, the bankruptcy court entered an order prohibiting the Debtor from making any further rent payments directly to the Landlord for the Leased Premises (referred to as "Masters"). The order stated that "Debtor shall not make any rent payments to MASTERS directly, but shall make all rent payments . . . to [Coe's] IOLTA Client-Trust Account . . . beginning August 1, 2023." The court further ordered that any such rent funds ("Disputed Rent Funds") should remain in Coe's "IOLTA account until further order of the Court."

### 3. The Bankruptcy court enters an order appointing a chapter 11 trustee.

The bankruptcy court held another status conference on August 2, 2023. Despite appropriate notice of the hearing, Coe failed to attend the status conference. At the hearing, the bankruptcy court was presented with evidence and testimony demonstrating that the Debtor was making payments to insiders without authority and full disclosure, and Debtor was using a non-debtor entity as a disbursing agent.

At the conclusion of the hearing, the bankruptcy court found that "there have been several missteps in the initial stages of this chapter 11 case

by Debtor's counsel," and stated that it was "very concerned that Debtor's counsel had not appeared for the hearing." The bankruptcy court determined that, based on the facts and the record, a chapter 11 trustee was necessary. Consequently, on August 8, 2023, the bankruptcy court entered an order approving the UST's application and appointed Karen Sue Naylor as the chapter 11 Trustee ("Trustee").

**B.      Debtor's bankruptcy case dismissed for bad faith.**

**1.      Trustee's motion to dismiss.**

On August 22, 2023, Trustee filed an emergency motion for an order dismissing the case with a 180-day bar to refiling (the "Motion" or "Motion to Dismiss"). The Motion to Dismiss was premised primarily upon the submission of falsified certificates of insurance and bank account statements to UST, Trustee, and the bankruptcy court. In the Motion and at the hearing, Trustee described the deceptive conduct and documents that necessitated the emergency Motion.

**a.      The falsified insurance documents.**

In the Motion, Trustee stated that although Debtor's Principal and Coe repeatedly represented that Debtor maintained insurance on the Leased Premises, those representations were false, and the Leased Properties were uninsured, notwithstanding the continued business operations at the Leased Properties. Trustee noted that insurance on the Leased Premises had been an issue from the outset. Trustee referenced the initial motion to dismiss for lack of insurance that was withdrawn after the UST was

provided certificates of insurance for all Leased Properties and amended monthly operating reports were filed, each indicating that all Leased Premises were fully insured and premiums paid.

Trustee stated that after she was appointed, Debtor's Principal made a comment about a lapse of insurance. According to Trustee, Debtor's Principal then made "shifting representations . . . regarding the nature and extent of the lapse in insurance." Trustee explained the comments were troubling and confusing because the certificates of insurance previously provided to the UST showed that the Leased Premises were fully insured. Upon further questioning, at an August 16, 2023, meeting, Debtor's Principal admitted that the Leased Premises were **not** insured. Trustee informed the "Principal that if he did not provide proof of insurance by the following day, she would shut down" all of the Leased Premises. The following day, the Principal provided Trustee with certificates of insurance with an expiration date of May 2024, and listing the Trustee as an additional insured. The certificates of insurance were identical to the certificates of insurance previously provided to the UST except the new certificates listed Trustee an additional insured.

Despite the alleged evidence of insurance, Trustee began investigating the status of insurance for the Leased Premises, and attempted to determine when the next policy payments were due. When Trustee called the insurance broker, Trustee was informed that every "certificate of insurance

6

that had been provided," both initially to the UST and later to the Trustee, was "falsified" and that the Debtor had no insurance with that broker.

A subsequent email from the insurance company confirmed that the "certificates provided by [the Debtor were] all fraud." The policy number listed on the fraudulent certificates of insurance was for a different company and expired in 2020. When confronted, Debtor's Principal "admitted that the insurance documents had been falsified, that he had created them and submitted them" to the UST and to Trustee. Debtor's Principal later admitted that "there had been no insurance on any of the Debtors Leased Premises for the entire case." Thus, all the certificates of insurance provided had been forged.

### b. The falsified bank account statements.

In addition to the sham insurance documents, Trustee also detailed evidence of forged bank statements submitted to the UST, Trustee, and filed with the bankruptcy court. Trustee explained that there were forged bank statements related to three Wells Fargo bank accounts ending in x0901, x7376, and x4761.

Early in the case, Debtor's Principal certified to the UST that Debtor's prepetition bank account (x0901) had been closed, and that Debtor had opened a new debtor in possession ("DIP") account (x7376). For the DIP account, Coe provided the UST with copies of the account application and signature card showing the DIP account was opened in April 2023. Trustee explained that after she was appointed, as part of her review of the case, she

7

noticed that all of the DIP bank statements (for account x 7376) which Coe had attached to monthly operating reports filed for April, May, and June, were incomplete and that the pagination of the statements was inconsistent. Trustee explained she was also unable to reconcile the bank account statements to the information provided in the monthly operating reports, including an unauthorized and undisclosed transfer of $120,000 to a non-debtor affiliated company, Optima Franchising, Inc.

On August 9, 2023, Mr. Coe and Debtor's Principal advised Trustee that Debtor had transferred all funds from the DIP account x7376, to a "new" DIP account ending in x4761 and that they closed DIP account x7376 in July 2023.

On August 9, 2023, Trustee sent a letter to Wells Fargo seeking to take control of the current DIP account x4761. Trustee also requested bank statements from January 2021 to the present for all three bank accounts (x7376, x4761, and x0901). Wells Fargo informed Trustee that DIP account x7376, which Mr. Coe and Debtor stated they had closed in July 2023 was actually closed two years earlier, in July **2021.** Thus, Mr. Coe had represented to the court that a closed bank account was a current DIP account in the monthly operating reports for April-July 2023. Trustee argued in her Motion that it was logical to conclude that all the bank statements for DIP account x7376 were falsified because the "Wells Fargo bank account ending in 7376 was closed in 2021." Wells Fargo also informed Trustee that the current DIP account x4761 had only $43.62 in funds, an

8

amount significantly less than the rent revenue reported on the monthly operating reports.

Trustee's investigation also uncovered that Debtor's scheduled prepetition account x0921, was not the Debtor's; rather, the name on the account was Optima Franchising Companies Holding. Additionally, account x0921 was never closed, despite assurances by Coe and Debtor's Principal. Debtor had transferred significant funds to account x0921 throughout the case. Trustee argued that based on the information provided by Wells Fargo, all statements for x0921 which were provided to the UST and the Trustee were likewise false because the statements had been altered in both the name on the account and the numbers.

Based on the fraudulent filings, the failure to maintain insurance, and the gross mismanagement of the estate, Trustee argued that the case should be immediately dismissed or converted to chapter 7 for cause pursuant to § 1112(b).

**2.    The bankruptcy court's order of dismissal.**

Debtor did not respond to Trustee's Motion to Dismiss. At a hearing on the Motion, Trustee's counsel reiterated the facts as described in the Motion and supporting declarations. The bankruptcy court expressed its grave concern:

> I have never seen in my 30-plus years of practice any situation like this before. I mean, I've seen Chapter 11 cases where there was no insurance. I've seen Chapter 11 cases where insurance

has expired. But the alleged fraud that the Trustee has pointed out through two declarations is rather astounding to me.

Hr'g Tr. 3:17-22, Aug. 24, 2023.

When the bankruptcy court asked Mr. Coe to respond, Mr. Coe stated that the "Debtor's not opposed to the Trustee's . . . motion to dismiss the case." Based on Mr. Coe's representation of Debtor's agreement to the dismissal, the bankruptcy court made an oral ruling dismissing the case.

On August 25, 2023, the bankruptcy court entered an order, consistent with its oral ruling, dismissing the case pursuant to § 1112(b) and barring Debtor from filing a bankruptcy case for a period of 180 days pursuant to § 349(a) ("Dismissal Order"). In the Dismissal Order, the bankruptcy court expressly held that based on the bad faith conduct, all pre-dismissal estate funds would remain estate property rather than revesting in the Debtor. The bankruptcy court expressly retained jurisdiction over several matters, including all motions regarding sanctions and the disposition of estate funds.

The Debtor did not appeal the Dismissal Order.

C.   **Trustee's motion for sanctions.**

On November 9, 2023, Trustee[4] filed a motion (the "Sanctions Motion") seeking an order (1) awarding sanctions pursuant to the court's

---

[4] At the time of filing the motion for sanctions, the Trustee was the former chapter 11 trustee given that the bankruptcy case had been dismissed. However, for ease of reading, the memorandum continues to refer to her as Trustee.

inherent power under § 105 against Debtor and Debtor's Principal; (2) issuing an order to show cause why Coe should not be sanctioned and/or all funds paid to or held by Coe disgorged; and (3) directing Coe to deliver all estate funds he was holding in its trust account, including its retainer and the Disputed Rent Funds, to Trustee.

The Sanctions Motion was based on the aforementioned misconduct, i.e. creating and submitting fraudulent documents which Trustee argued demonstrated bad faith and an intent to deceive Trustee, the UST, and the bankruptcy court regarding the operation of the Debtor's business in bankruptcy. Trustee requested sanctions against the Debtor and the Debtor's Principal in an amount of $83,422 to compensate Trustee and Trustee's counsel for fees and costs directly attributable to investigating and addressing the misconduct of Debtor, Debtor's Principal, and Coe ("Misconduct Fees"). Trustee excluded from the sanctions request any fees and costs incurred in ordinary case administration.

Trustee acknowledged that she was "not aware of any evidence that [Mr.] Coe knew of or was involved in Debtor's Principal's willful misconduct." Nevertheless, Trustee argued that Mr. Coe acted with extreme negligence and recklessness and breached his fiduciary duties to the estate. Trustee argued that Mr. Coe failed to conduct a reasonable investigation to ensure that all the documents he filed were true and accurate, and that this failure resulted in the dismissal of Debtor's case. Trustee maintained that Coe filed documents that were deceptive on their face. Trustee included

11

several examples that she alleged demonstrated fraud or at least issues of concern that a reasonable and diligent attorney would have noticed and investigated.[5] Although Coe had yet to file a fee application, Trustee maintained that Coe should not be awarded any fees.

Trustee sought to pay the Misconduct Fees in part by using the cash amounts held by the estate, including the amounts held in Coe's trust account.

**D.**   **Coe's first and final fee application.**

On November 15, 2023, after Trustee filed the Sanctions Motion, Coe filed a first and final fee application ("Fee Application"). The Fee Application sought an award of $93,661.54 ($91,325 in fees and $2,336.54 in expenses). The Fee Application disclosed that Coe held $18,262 from its prepetition retainer ($20,000 retainer less $1,738 filing fee). The Fee Application sought compensation for 6 different categories of work: (1) $1,380 for "administration"; (2) $46,035 for "case administration"; (3) $27,720 for "asset analysis and recovery"; (4) $4,675 for preparation of Coe's employment application; (5) $1,375 for "business operations"; and (6) $9,460 for the preparation of the plans and disclosure statements.

---

[5] The examples included (1) a Status Report filed on July 28, 2023 in which Coe represented that the Debtor's monthly revenue was $175,687 and the total rent amount was $92,940, **however**, there was only $44.00 in the Debtor's bank account when the Trustee was appointed; and (2) an amended June monthly operating report which listed total receipts of $34,362 and disbursements of $34,362, **but** the attached bank statements represented that there were $128,607.28 in deposits and $128,386.24 in disbursements.

12

The UST objected to the Fee Application, stating that it was "representative of the substandard work performed" by Coe. The UST argued Coe's failure to categorize tasks in the Fee Application as required by the Local Bankruptcy Rules and the UST Guidelines prevented the UST from determining the reasonableness of the fees requested. The UST listed additional reasons why Coe's representation was substandard and why the Fee Application was excessive: (1) the initial schedules were materially inaccurate and had to be amended despite the case having a simple debt structure with less than 20 creditors; (2) Coe's employment application was initially denied and had to be refiled because Coe failed to properly explain the terms and conditions of his employment; (3) the plan form used by Coe was outdated and incorrect; (4) the case never made it far enough to have a hearing on the proposed plan and disclosure statement; (5) the "motions to assume leases were templates that merely interchanged some basic information about the leases, but the motions were never granted"; (6) Coe's failure to appear at the status conference led to Trustee's appointment and the "ultimate dismissal of this case without a single penny paid on pre-petition claims."

Trustee also filed an objection to the Fee Application. Trustee joined the UST in its objection. Additionally, Trustee "object[ed] to the approval of any of the fees" sought by Coe and incorporated by reference the evidence and argument submitted in support of the Sanctions Motion.

13

**E.    Coe's opposition to the Sanctions Motion.**

Coe did not submit an amended Fee Application or otherwise respond to the Fee Application objections. In Coe's opposition to the Sanctions Motion, Coe requested its Fee Application be heard at the same time as the Sanctions Motion.

In his opposition to the Sanctions Motion, Mr. Coe argued his actions were not "akin to contempt" because his law firm merely filed the documents provided by Debtor's Principal and he "could not have known" that the documents were falsified. In addition to refusing to take responsibility for the accuracy of the documents provided by Debtor's Principal, Mr. Coe took no responsibility for failing to verify the accuracy of the documents it filed related to its own records, instead blaming its bankruptcy software for filing documents showing that it received two prepetition retainer payments of $20,000 when Coe only received one payment.

Coe, citing to out-of-circuit case law, maintained that the Trustee had no rights to its prepetition retainer or the Disputed Rent Funds. Coe also argued that pursuant to § 326, the bankruptcy court could not award Trustee compensatory attorney's fees because Trustee's fees could not exceed $4,303.32. The only argument put forth on behalf of the Debtor was the assertion that the "dismissal of the case with a bar to refiling was the ultimate sanction to the Debtor," and therefore, no further sanctions were warranted.

14

**F.**     **The court's hearing and orders related to the Fee Application and the Sanctions Motion.**

The court held a hearing on the Fee Application and the Sanctions Motion on December 6, 2023. At the hearing, Mr. Coe appeared on behalf of both the Debtor and the law firm. Debtor's Principal did not appear.

As to the Fee Application, when questioned by the court, Trustee argued that Coe should not be awarded any fees. First, Trustee argued that the insurance issues should have alerted Coe to a possible problem and therefore, Coe was not entitled to simply rely on Debtor's Principal for information. Rather, Coe had a duty to engage in additional due diligence and investigate the current status of insurance on each of the Leased Premises.

Second, Trustee argued that the bank statements evidenced obvious deficiencies and a diligent attorney would have discovered the falsity of the documents. By way of example, Trustee pointed to several details in the April monthly operating report bank statement that a diligent attorney would have noticed, found concerning, and investigated. Trustee described that although the bank statement: (1) stated it had 4 pages, both the first and second pages showed "page 1 of 4" and there was no page 2 or page 4 of 4; (2) showed a balance on April 1, 2023 (prepetition) even though Coe had stated that the account wasn't opened until after the bankruptcy petition was filed on April 17, 2023; (3) showed a statement date (closing date) of

15

April 21, 2023, but the body of the statement showed transactions after this date.

Mr. Coe responded by arguing that he had never called an insurance company to confirm insurance because he had no duty beyond accepting the certificates of insurance provided by Debtor's Principal. Mr. Coe did not address the fraudulent bank accounts specifically. However, he generally argued that he should not be penalized for submitting fraudulent documents because those documents were provided by Debtor's Principal.

After hearing from the parties, the bankruptcy court determined that based on the evidence presented and the totality of circumstances, a reasonable reflection of the value of Coe's efforts was $5,000 in attorney's fees.

The bankruptcy court also determined that the Debtor and the Debtor's Principal had committed fraud upon the court, were in contempt of court, and thus, sanctions against the Debtor and Debtor's Principal in the amount of the Misconduct Fees were appropriate. The bankruptcy court subsequently entered orders consistent with its oral rulings.

The order awarding Coe's attorney's fees and costs ("Fee Award Order") stated that the court found by "clear and convincing evidence that based upon the reasonable value of the services performed and their benefit to the estate," Coe's fees and expenses were allowed in the amount of $5,000. The court further ordered Coe to remit to Trustee the sum of $13,262

16

which represented the balance of the retainer after deducting the authorized $5,000 in fees ("Excess Retainer Funds").

The order imposing sanctions ("Sanctions Order") stated the sanctions were "awarded pursuant to the Court's inherent authority as established by Section 105(a) against the **Debtor and the Principal**, jointly and severally, in the total amount of [the Misconduct Fees] $83,422.00 . . . payable to the Trustee and her counsel . . . which amount comprises the value of the reasonable fees . . . that are directly attributable to the Debtor's misconduct in this case." (Emphasis added).

Coe, solely on its own behalf, appeals both the Fee Award Order and the Sanctions Order.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether the bankruptcy court abused its discretion in awarding Coe $5,000 in fees and costs.

Whether the bankruptcy court abused its discretion in ordering Coe to disgorge and remit the Excess Retainer Funds to Trustee.

Whether Coe has standing to appeal the Sanctions Order.

## STANDARDS OF REVIEW

We review the bankruptcy court's decision regarding the proper amount of legal fees to be awarded to the debtor's attorney for an abuse of

17

discretion. *Shalaby v. Mansdorf* (*In re Nakhuda*), 544 B.R. 886, 898 (9th Cir. BAP 2016), *aff'd*, 703 F. App'x 621 (9th Cir. 2017). A bankruptcy court's disgorgement order directed to a debtor's attorney is also reviewed for abuse of discretion. *Hale v. U.S. Tr.* (*In re Basham*), 208 B.R. 926, 930 (9th Cir. BAP 1997), *aff'd sub nom. In re Byrne*, 152 F.3d 924 (9th Cir. 1998). Under the abuse of discretion standard, we affirm unless the court below "applied the wrong legal standard or its findings were" clearly erroneous. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011) (citing *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)). Factual findings are not clearly erroneous unless they are illogical, implausible, or without support from the facts in the record. *Hinkson*, 585 F.3d at 1262. We may not reverse simply because we would have decided the factual issue differently. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985).

Questions of standing are reviewed de novo. *Motor Vehicle Cas. Co. v. Thorpe Insulation Co.* (*In re Thorpe Insulation Co.*), 677 F.3d 869, 879 (9th Cir. 2012). "De novo review requires that we consider a matter anew, as if no

decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

We may affirm on any ground supported by the record. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014).

## DISCUSSION

## A.    Legal standards governing fee applications

The Bankruptcy Code contains several provisions designed to ensure that attorneys are compensated only for services that are actually and necessarily rendered for the benefit of the estate. *See Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040, 1045 (9th Cir. 1997). First, § 329(b) authorizes the court to examine the reasonableness of a retainer agreement and, if such compensation exceeds the reasonable value of any such services, the court may cancel the agreement, or order the return of a payment, to the extent excessive. *See Hale*, 509 F.3d at 1147. Next, § 330(a)(1) limits an award of fees to "reasonable compensation for actual, necessary services" and § 330(a)(2) authorizes the court to "award compensation that is **less than** the amount of compensation that is requested" if the requested amount is unreasonable. (Emphasis added). To determine the reasonableness of the requested compensation a bankruptcy court is directed to consider the following issues: (1) whether the legal services were authorized; (2) whether the legal services were necessary or beneficial to the administration of the estate at the time they were rendered; (3) whether the legal services were adequately documented; (4) whether the requested fees

were reasonable, taking into consideration the factors set forth in § 330(a)(3)[6]; and (5) whether the professional exercised reasonable billing judgment. *Leichty v. Neary (In re Strand)*, 375 F.3d 854, 860 (9th Cir. 2004) (citing *Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re MEDNET, MPC Corp.)*, 251 B.R. 103, 108 (9th Cir. BAP 2000)).

The reasonable value of services rendered by a debtor's attorney "is a question of fact to be determined by the particular circumstances of each case." *In re Nakhuda*, 544 B.R. at 902 (quoting *In re Spickelmier*, 469 B.R. 903, 914 (Bankr. D. Nev. 2012)). "The burden is upon the applicant to demonstrate that the fees are reasonable." *In re Basham*, 208 B.R. at 931-32 (citation omitted). "[A] bankruptcy court has broad discretion to determine the number of hours reasonably expended." *Wechsler v. Macke Int'l Trade, Inc. (In re Macke Int'l Trade, Inc.)*, 370 B.R. 236, 254 (9th Cir. BAP 2007). "[E]ven where evidence supports [that] a particular number of hours [were] worked, the court may give credit for fewer hours if the time claimed is 'excessive, redundant, or otherwise unnecessary.'" *Id.* (quoting *Dawson v. Wash. Mut. Bank, F.A. (In re Dawson)*, 390 F.3d 1139, 1152 (9th Cir. 2004)

---

[6] Section 330(a)(3) recognizes the following as relevant factors: (A) the time spent on the services; (B) the rates charged for the services; (C) whether the services were necessary or beneficial at the time the services were rendered; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) whether the person demonstrated skill and experience in the bankruptcy field; (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than bankruptcy cases.

(abrogated on other grounds)); *see also In re Spickelmier*, 469 B.R. at 914 (affirming the reduction of compensation for work done that was excessive or of poor quality); *In re Basham*, 208 B.R. at 933 (disgorgement upheld for incomplete and inaccurate schedules, improperly claimed exemptions, improperly noticed plan confirmation hearing). Indeed, the "bankruptcy court has broad and inherent authority to deny any and all compensation . . . ." *In re Lewis*, 113 F.3d at 1045; s*ee also*; *In re Wilde Horse Enters., Inc.*, 136 B.R.830, 844-47 (Bankr. C.D. Cal. 1991) (disallowing all fees where counsel breached fiduciary duty to act in the best interests of the estate and failed to act competently). The bankruptcy court is prohibited from awarding compensation for unnecessary duplication of services or for services that were not reasonably likely to benefit the debtor's estate, or necessary to the administration of the case. § 330(a)(4)(A).

**B.    The bankruptcy court did not abuse its discretion in awarding Coe $5,000 in attorney's fees.**

On appeal, Coe makes a variety of arguments as to why the bankruptcy court erred in limiting the award of fees to $5,000. Coe argues that the amount awarded was either a reduction without a factual basis, was the result of a 9011 sanction, or was erroneously punishing Coe for Debtor's actions. Coe's arguments lack merit.

When reducing fees, the court must "provide a concise but clear explanation of its reasons for the fee award," *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), and must also "articulate with sufficient clarity the manner

21

in which it makes its determination." *Chalmers v. City of L.A.*, 796 F.2d 1205, 1211 (9th Cir. 1986), *amended*, 808 F.2d 1373 (9th Cir. 1987). The court is not required to include detailed calculations in its explanations, but "something more than a bald, unsupported amount is necessary." *Id.* at 1211 n.3.

Here, the bankruptcy court determined that fees requested by Coe were unreasonable but did not specify what factors it considered when determining the "reasonable" fee award for Coe. *See In re Strand*, 375 F.3d at 860. Rather, the bankruptcy court set forth a bottom-line amount of $5,000 that it determined represented "reasonable" compensation for Coe's fees and costs in the case.

While we do not condone such a "meat-axe approach[7]" and we are frustrated by the bankruptcy court's lack of detailed analysis, we nevertheless determine that remand is not necessary because the bankruptcy court's findings, combined with the record, are "explicit enough on the ultimate issues to give the appellate court a clear understanding of the basis of the decision and to enable it to determine the grounds on which the trial court reached its decision." *Amick v. Bradford (In re Bradford)*, 112 B.R. 347, 353 (9th Cir. BAP 1990) (citation omitted). *See also Amantea-Cabrera v. Potter*, 279 F.3d 746, 750 (9th Cir. 2002) ("If the district court's findings are sufficient to indicate the factual basis for its ultimate conclusion, in light of the record viewed in its entirety, then it is not clearly erroneous."); *Simeonoff*

---

[7] *See Gates v. Deukmejian*, 987 F.2d 1392, 1398-1400 (9th Cir. 1992).

*v. Hiner*, 249 F.3d 883, 891 (9th Cir. 2001) ("Conclusory and unhelpful findings of fact do not necessarily require reversal if the record supports the district court's ultimate conclusion."); *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1051 (9th Cir. 1985) ("A district court's failure to make express findings does not require a remand if 'a complete understanding of the issues may be had [from the record] without the aid of separate findings.'") (quoting *Swanson v. Levy*, 509 F.2d 859, 861 (9th Cir. 1975).

Importantly, we review fee awards through a lens of broad deference to the bankruptcy court "because of its 'superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'" *Phillips v. Gilman (In re Gilman)*, BAP No. CC-18-1101-STaL, 2019 WL 3074607, at *3 (9th Cir. BAP July 12, 2019) (quoting *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012)), *aff'd sub nom. Phillips v. Gilman*, 836 F. App'x 511 (9th Cir. 2020). *See also Gates*, 987 F.2d at 1398 (holding the bankruptcy court enjoys considerable discretion in determining the reasonableness of the time spent given its familiarity with the case); *Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008) ("court has discretion to determine the appropriate fee award, because its familiarity with the case allows it to distinguish reasonable from excessive fee requests"). As explained in *Gilman*,

> This deference is especially appropriate in the context of fee awards because the bankruptcy court has the benefit of two

distinct but equally valid perspectives concerning the reasonableness of the fees requested: first, the bankruptcy court observes, in an immediate, particularized, and firsthand basis, the delivery of services in connection with particular matters or hearings, and can thus assess the difficulty of the tasks presented and other factors that should dictate the likely time and skill necessary to produce the services, as well as the quality of the services; second, the bankruptcy court has the added perspective of presiding over the matter in a cumulative sense, and is therefore also uniquely able to assess the overall reasonableness of fees measured by the entirety of the aggregate task. Both perspectives are valid, and the bankruptcy court may employ either, or both, in any given instance.

*In re Gilman*, 2019 WL 3074607, at *4.

From the bankruptcy court's findings and a review of the record, the bankruptcy court's determination of the reasonable value of Coe's representation appears to be based on the bankruptcy court's findings that Coe failed to: (1) competently perform its legal services; (2) provide a sufficiently detailed and accurate fee application; and (3) ensure the documents and information filed with the court were accurate and not falsified.

First, the bankruptcy court found that Coe acted without the necessary competence in performing its legal services throughout the case. "Competent representation of one's client is a part of an attorney's ethical responsibility . . . [and] failure to use reasonable diligence . . . is a breach of the attorney's fiduciary duty to the client." *In re Wilde Horse Enterprises, Inc.*, 136 B.R. at 844. Services incompetently performed have no value and cannot

be compensated. *Id.* Relatedly, failure of counsel to conduct a reasonable inquiry when information places counsel on notice of matters that could adversely impact the bankruptcy estate may warrant a disgorgement of fees. *See In re Count Liberty, LLC*, 370 B.R. 259, 287 (Bankr. C.D. Cal. 2007).

Here, the bankruptcy court found that Coe's legal performance throughout the case was "troubling," deficient, and that Coe had "mishandled" the case from the beginning. Specific examples of subpar performance cited by the bankruptcy court either expressly or through its incorporation of the facts and evidence presented by the Trustee and UST in the Motion to Dismiss included: (1) Coe opening the case with "materially inaccurate" statements despite the case being relatively simple with few creditors; (2) Coe's continued filing of documents throughout the case that contained errors which required multiple corrections, revisions, and refiling;[8] (3) Coe failing to provide the UST with insurance information for the Leased Premises causing the UST to file a motion to dismiss or convert; (4) Coe's failure to attend a scheduled status hearing which resulted in the court appointing a chapter 11 trustee; (5) Coe's use of an outdated form plan that did not conform to current statutory requirements; and (6) the dismissal of the case before a hearing on a plan and disclosure statement and before any payments were made to unsecured creditors.

---

[8] Coe's timesheet showed that Coe billed over $9,500 for time Coe spent "revising," and $8,500 for time spent "reviewing."

Second, the bankruptcy court implicitly determined that it was unable to be more specific as to which charges included in the Fee Application were reasonable because Coe had "failed miserably with respect" to its Fee Application by failing to explain what it "did in the categories, the billing categories, of administration, case administration, asset analysis and recovery." On appeal, Coe does not point to evidence showing these factual findings to be clearly erroneous, and the record supports the findings.

In addition to being vague, the Fee Application contained a litany of inaccurate and untrue "facts." It appears that Coe reused a previously submitted fee application and failed to change several sections. For example, in the narrative section, Coe cited to false facts including: (1) in the section discussing "the novelty and difficulty of the questions involved," Coe stated that the case "represent[ed] [sic] a single asset real estate and three restaurants," with "complex issues, including issues relating to the interplay of the rights and responsibilities of the various secured lenders with no controlling agreement, the impending judgment and execution, which resulted in the adversary proceeding"; (2) Coe "negotiated and obtained authorization to use cash collateral during the pendency of the case, both by various emergency cash collateral motions and various stipulations with Bank of Hope for use of that cash collateral; (3) in the section describing the "skill requisite to perform the legal services properly" Coe stated that this "chapter 11 started with disputes between various creditors both secured and unsecured as well as a judgment holder, who

wanted to control the debtor's business"; and (4) in the section describing the "amount involved and the results obtained," Coe stated that the case resolution involved "the final sale of the business without closing by the Chapter 11 Trustee."

None of the above facts are accurate. The case was not filed because a judgment holder wanted to control the Debtor's business; rather, it was commenced because Debtor was behind in rent and wanted to reject several leases. Additionally, Coe did not present any motions for use of cash collateral and Coe did not negotiate with Bank of Hope because Bank of Hope was not a creditor in the case.

Finally, the bankruptcy court found that Coe had failed to properly review the debtor's finances and record. Specifically, counsel failed to verify the insurance certificate and bank records provided by the debtor. The Trustee subsequently discovered that these records were false. The bankruptcy court believed Coe should have discovered that the debtor lacked insurance and had falsified its banking records well before the Trustee.[9] The salient point here is that Coe failed to adequately represent the debtor such that his services provided little benefit to the estate. Under the "significantly deferential" review standard, the bankruptcy court's findings are plausible in light of the record viewed in its entirety and we are

---

[9] The issue of when an attorney for a debtor in possession should investigate the information provided by his or her client, or the level of inquiry required, is not before us and we make no determination as those issues.

27

not left with a "definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

Based on the foregoing, the bankruptcy court's $5,000 fee award was within its discretion: the court employed the correct legal standard and its application of that standard to the facts was not illogical, implausible, or without support in inferences that may be drawn from the facts in the record.

## C.    The award of fees and costs was not a sanction.

Coe argues in the alternative that the Fee Award Order was an improper sanction. Beyond that conclusory allegation, Coe fails to provide any legal or factual support for this argument. Contrary to Coe's assertions, the bankruptcy court's decision to award Coe $5,000 was not a sanction. The Sanctions Order is clear as to whom the bankruptcy court sanctioned – sanctions were ordered against Debtor and Debtor's Principal jointly and severally. Coe was not included in the parties who were sanctioned. This is consistent with the bankruptcy court's statements at the hearing in which it stated that it was intending to sanction only Debtor and Debtor's Principal. The bankruptcy court explained that the fee award was a reflection of Coe's performance and repeated that the amount was not a sanction and not meant to punish Coe for Debtor's misconduct.

**D.    The bankruptcy court's order instructing Coe to remit the excess retainer funds was not an abuse of discretion.[10]**

Coe also argues that the bankruptcy court erred in requiring it to remit all but $5,000 of its retainer because it "had a security interest [in the retainer] that was not subject to subordination" and therefore it was entitled to keep the entire retainer. Coe misstates the law.

Before representing a debtor in a Chapter 11 case, counsel often require a retainer. In general, three types of retainers exist: (1) classic or true retainers, (2) security retainers, and (3) advance payment retainers. *Rus, Miliband & Smith, APC v. Yoo (In re Dick Cepek, Inc.)*, 339 B.R. 730, 736 (9th Cir. BAP 2006). A "security" retainer is held to secure payment of fees for future services the attorney is expected to render. However, all retainers, no matter how described, are property of the bankruptcy estate and not of the professional, and are subject to the bankruptcy court's review, modification, and approval. *See In re Hathaway Ranch P'ship*, 116 B.R. 208, 217 (Bankr. C.D. Cal. 1990); *Kun v. Mansdorf* (*In re Woodcraft Studios, Inc.*), 464 B.R. 1, 11 (N.D. Cal. 2011), *aff'd*, 558 F. App'x. 755 (9th Cir. 2014).

Because Coe's retainer secures payment for fees and costs specifically allowed by the bankruptcy court pursuant to the procedures and guidelines set forth in §§ 330 and 331, any retainer remaining after the bankruptcy

---

[10] The Fee Award Order directed Coe to "remit" the balance of the retainer after application of the $5,000 in allowed fees. Trustee and Coe also use the terms turnover and disgorge. Regardless of the terminology, the analysis and review are the same.

court has ruled on a fee application is property of the estate subject to turnover. Coe's Application to Employ acknowledged this statutory rule, specifically stating that "compensation in the Case is subject to prior approval of the Court. No compensation will be paid except upon application to and approval by the Court after notice and a hearing in accordance with sections 330 and 331 . . . ."

In this case, Debtor gave Coe a $20,000 retainer with $18,262.00 remaining at the time it filed the Fee Application.[11] As detailed in the previous section, in response to the Fee Application, the bankruptcy court awarded Coe $5,000. Accordingly, Coe was authorized to deduct that amount from the retainer. The court ordered Coe to remit to Trustee all funds remaining from the retainer after deduction of the fee award (the Excess Retainer Funds).

Beyond conclusory statements, Coe fails to direct the Panel to specific legal errors or erroneous factual findings by the bankruptcy court. Because we find that the bankruptcy court applied the correct law and its factual findings are not illogical, implausible, or without support in the record, the bankruptcy court did not abuse its discretion in ordering Coe to remit the Excess Retainer Funds to Trustee.

---

[11] This amount reflects the payment of the $1,738 filing fee.

Based on the foregoing, we AFFIRM the Fee Award Order.

**E.     Coe lacks standing to appeal the Sanctions Order.**

Trustee argues that Coe does not have standing to appeal the Sanctions Order because it was not a party sanctioned by the court. We agree.

Standing is a threshold jurisdictional requirement derived from the "case-or-controversy" requirement of Article III of the Constitution. *Clifton Cap. Grp., LLC v. Sharp* (*In re E. Coast Foods, Inc.*), 80 F.4th 901, 905-06 (9th Cir. 2023). The Ninth Circuit recently clarified that Article III jurisdiction must be determined before analyzing the prudential "person aggrieved" requirement. *Id.* at 906. To demonstrate Article III standing, a plaintiff must have "(1) suffered an 'injury in fact' that is concrete, particularized, and actual or imminent, (2) the injury is 'fairly traceable' to the defendant's conduct, and (3) the injury can be 'redressed by a favorable decision.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Under the prudential standing doctrine "only a person aggrieved, that is, someone who is directly and adversely affected pecuniarily by a bankruptcy court's order, has standing to appeal that order." *Harkey v. Grobstein (In re Point Ctr. Fin., Inc.)*, 890 F.3d 1188, 1191 (9th Cir. 2018) (internal quotation marks and citation omitted). "An order that diminishes one's property, increases one's burdens, or detrimentally affects one's rights has a direct and adverse pecuniary effect for bankruptcy standing purposes." *Id.* (citation omitted).

31

Here, Coe is not representing the Debtor on appeal, and instead is appearing solely on its own behalf.[12] Therefore, to appeal the Sanctions Order, Coe must establish its own injury resulting from the Sanctions Order. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975). Coe fails to demonstrate that the Sanctions Order injured Coe or affected any of its legally cognizable rights or interests. *See Raines v. Byrd*, 521 U.S. 811, 819 (1997). This is because even if the Panel were to vacate the Sanctions Order, there is no evidence that Coe's "injury will be redressed," (where the injury is the amount of fees awarded) because the Excess Retainer Funds and the Disputed Rent Funds would not revert to Coe, nor would a vacation of the Sanctions Award increase the amount of fees award to Coe. Rather, any funds held in Coe's trust account would likely revest with Debtor. *See Nash v. Kester (In re Nash)*, 765 F.2d 1410, 1414 (9th Cir. 1985) (explaining when a case is dismissed, property of the estate ordinarily revests in the debtor). Accordingly, Coe fails to demonstrate it has suffered an injury in fact as a result of the Sanctions Order. Without any demonstrable injury to the rights or interests at issue in the Sanctions Order, Coe has failed to meet its standing burden. *See Raines*, 521 U.S. at 819.

Based on the foregoing, Coe's appeal of the Sanctions Order is DISMISSED for lack of standing.

---

[12] Neither the Debtor nor the Debtor's Principal have appeared in the appeals.

## CONCLUSION

We AFFIRM the bankruptcy court's Fee Award Order, BAP No. CC-23-1202. We DISMISS the appeal of the bankruptcy court's Sanctions Order, BAP No. CC-23-1203 based on Coe's lack of standing.